Marvin W. MORSE, Plaintiff,

v.

SWANK, INC., Pierre Cardin, S.A.R.L. de Gestion Pierre Cardin, Max J. Bellest, and Coordinating Office, Inc., Defendants.

No. 77 Civ. 5185 (CHT).

United States District Court,
S. D. New York.

Oct. 10, 1978.

Solin & Breindel, New York City, by Howard Breindel, Daniel R. Solin, New York City, for plaintiff.

Greenbaum, Wolff & Ernst, New York City, for defendants Pierre Cardin, S.A.R.L. de Gestion Pierre Cardin, Max J. Bellest, and Coordinating Office, Inc.; Sydney J. Schwartz, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

This is an action brought by Marvin W. Morse that charges violations of the antitrust laws, breach of contract, tortious interference with a contract, fraud, and negligence. In the instant motion, defendants Max J. Bellest and Coordinating Office, Inc. ("Bellest defendants") and Pierre Cardin and S.A.R.L. de Gestion Pierre Cardin ("Cardin defendants") ask for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rules"). Defendant Bellest individually moves for a stay of deposition. For the reasons set forth below, summary judgment is granted in favor of the Bellest defendants on the fourth and fifth causes of action only; it is denied as to all other defendants on all causes of action and denied as to the Bellest defendants on the other causes of action against them. Bellest's motion to stay his deposition is also denied.

### The Parties

Plaintiff Morse is a New York citizen who negotiated with the Cardin defendants to obtain a license for the sale of Pierre Cardin lighters. Defendant Pierre Cardin is a French citizen and is a world-famous designer of men's and women's clothing, jewelry, and related product lines. Defendant S.A.R.L. de Gestion Pierre Cardin ("SARL"), also a French citizen, is the designer in corporate form. Defendant Max Bellest is a New York citizen. He is employed by and is the sole shareholder of Bellest Corporation, a New York entity that, as an independent contractor, represents SARL in the United States and Canada by supervising licensing agreements between Cardin and the Canadian and American licensees. Defendant Coordinating Office, Inc. ("CO"), incorporated at Bellest's suggestion, is likewise a New York corporation that coordinates promotions, advertising, and merchandising by American licensees of Pierre Cardin trademarked products. Defendant Swank, Inc. is incorporated in Delaware and has its executive offices in New York. Swank manufactures, distributes, and sells jewelry and related items under the Pierre Cardin trademark. It has exclusive distribution rights in the United States on some items of men's and women's jewelry and leather accessories.

### Background

Late in 1975, plaintiff Morse began selling Pierre Cardin lighters in duty-free shops in the United States through an unexplained arrangement with Cardin. Based on his success in selling the lighters in this market, Morse decided to expand to reach the American market generally. In August 1977 he contacted CO to begin negotiating for such a Pierre Cardin license. CO referred Morse to the Cardin office in Paris. During the next several months, Morse and Herve Duquesnoy of SARL negotiated over terms of the prospective license; however, in a letter dated March 24, 1977, Duquesnoy informed Morse that the negotiations were at an end because the license had been promised to defendant Swank. Letter from Herve Duquesnoy to Mr. Worse [sic], appended as Exhibit I of Affidavit of Howard Breindel, sworn to February 16, 1978 ("Breindel Affidavit").

In his letter terminating negotiations with Morse, Duquesnoy referred to a longstanding relationship between Cardin and Swank that began at least as early as October 13, 1967 when those two parties entered a licensing agreement for the manufacture and sale of men's jewelry and related product lines. The term jewelry was understood to include lighters. The agreement

gave Swank exclusive rights to market the specified items except, as is relevant here, "to jewelry manufactured of precious metals or containing precious stones, retailing at a price in excess of $75.00 per item." Cardin-Swank Agreement, dated October 13, 1967, ¶ 1, appended to Cardin Defendants' Motion for Summary Judgment ("1967 Agreement").[1] However, while Swank began exploring the marketing of Cardin lighters in 1975, see Affidavit of John A. Tulin, sworn to April 1978, Exhibits A, B (letters from prospective suppliers of Cardin lighters providing requested prices) ("Tulin Affidavit"), not until March 8, 1977 did Marshall Tulin, vice-president of Swank, write Pierre Cardin to tell him of Swank's decision to consider the sale of lighters as provided for in the 1967 Agreement. Two weeks later, SARL, through Duquesnoy, terminated further negotiations with Morse.

### The Complaint

The amended complaint[2] alleges five causes of action. The first is founded on an antitrust theory wherein Morse sues all five defendants under Section 1 of the Sherman Act, 15 U.S.C. § 1 (as amended). He alleges a combination and conspiracy in unreasonable restraint of trade to bar him from marketing Pierre Cardin lighters and thereby competing with Swank, claiming that Cardin's breached agreement, refusal to deal, and consummation of "the Swank Contract" were all acts in pursuit of the combination and conspiracy to restrain trade. Morse claims injury to himself, restrained competition in the distribution and sale of Pierre Cardin lighters and in the use of the Pierre Cardin trademark, and reduced consumer choice.

Morse's second cause of action appears to be aimed at Pierre Cardin alone.[3] He alleges that on or about March 10, 1977 Morse and Cardin entered an agreement for the distribution of Pierre Cardin lighters and that Cardin breached that agreement shortly thereafter. This cause of action relates to the third, which alleges that Swank, Bellest, and CO tortiously interfered with the Morse-Cardin agreement.

The fourth and fifth causes of action are pleaded alternatively to each other and only if the Swank contract is found to have been executed prior to the purported agreement with Morse. On one theory, Morse charges that Pierre Cardin and the Bellest defendants defrauded him by making materially false statements as to Cardin's trademark rights. Alternatively, Morse alleges injury by the same defendants through negligent misrepresentations.

Jurisdiction over the antitrust cause of action is founded on Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26 (as amended). Jurisdiction over the second through the fifth causes of action is founded in diversity, 28 U.S.C. § 1332, and in the doctrine of pendent jurisdiction.[4]

---

1. An agreement amending the original agreement was reached on May 25, 1976. Although the new agreement altered the terms of the exclusivity, it retained a price demarcation between exclusive and nonexclusive items. The penultimate sentence of ¶ 1 of the 1967 Agreement (quoted in the text, supra) was amended to read:

    Notwithstanding the foregoing, the license hereby granted with respect to sterling silver men's jewelry is hereby limited to exclude such jewelry retailing at normal mark-up for $55 or more during the period ending April 12, 1978, $60 or more during the period April 13, 1978 through April 12, 1980, and $65 or more after April 12, 1980.

    Swank-Cardin Amended Agreement, dated May 25, 1976, ¶ 1(d), at 3, appended to Bellest Defendants' Motion for Summary Judgment.

2. The original complaint was amended to correct the title of Coordinating Office, Inc.

3. The amended complaint directs the second cause of action against defendant Cardin alone, Amended Complaint ¶ 24 (heading), but in his papers, plaintiff states that the second cause of action is against Cardin and SARL. Affidavit of Howard Breindel, sworn to February 16, 1978, ¶ 6 ("Breindel Affidavit").

4. The Bellest defendants' arguments that as to them the Court lacks jurisdiction over the third, fourth, and fifth causes of action are without merit. While they rightly assert that there is no diversity between Morse and them, the causes of action are pendent to the antitrust claim, and the pendent claims survive in this Court at least as long as the antitrust claim remains viable. *United Mine Workers v.*

The Cardin and the Bellest defendants have filed separate motions for summary judgment, but they join in most contentions. Their version of the facts centers on an alleged "mistake" by Herve Duquesnoy, a young Frenchman in the SARL organization: according to the defendants, Duquesnoy negotiated with Morse over the license to sell Pierre Cardin lighters without realizing that Cardin had previously licensed Swank to sell such lighters, and when Duquesnoy became aware of the other agreement, he so informed Morse and referred him to Swank for any further discussions.

This innocent explanation is buttressed by several legal arguments, particularly that the record establishes that the plaintiff is not the real party in interest; that the defendants never restrained trade nor conspired to, but that Cardin acted within his trademark rights in refusing to grant another lighter license; that the Morse-Cardin negotiations never ripened into an agreement and, accordingly, no agreement was breached; that no defendant induced a breach of any agreement; and that any mistakes by anyone in the Cardin organization do not constitute fraud or negligent misrepresentation.

## Discussion
### Summary Judgment

■ The standards for summary judgment in the Second Circuit have changed over time. *Compare Arnstein v. Porter,* 154 F.2d 464, 468 (2d Cir. 1946) (deny summary judgment if there is the "slightest doubt" as to the facts), *with Beal v. Lindsay,* 468 F.2d 287, 291 (2d Cir. 1972) (when movant shows adversary's claim is baseless, opponent "must adduce factual material which raises a substantial question of the veracity or completeness of the movant's showing or

presents countervailing facts"), *and Dressler v. MV Sandpiper,* 331 F.2d 130, 132–33 (2d Cir. 1964) (respondent's vague and conclusory allegations would not be sufficient under Rule 56 to deny summary judgment). Even with the more liberal interpretation of Rule 56, however, the "fundamental maxim" remains, as Chief Judge Kaufman pointed out, that "the court cannot on such motions try issues of fact; it can only determine whether there are issues to be tried." *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975). A court must resolve ambiguities against the movant and draw reasonable inferences in favor of the opponent, with the burden on the moving party of establishing that there are no genuine issues of material fact to be tried. *Id.* at 1320 (citations omitted).

### Real Party in Interest

■ Defendants contend that Morse is not the real party in interest because the Morse negotiations for a Cardin license were allegedly on behalf of Morse Typewriter Co. or a group of joint venturers, but not with Morse individually. Affidavit of Sydney J. Schwartz, sworn to February 28, 1978, ¶ 5(a) ("Schwartz Affidavit"). In response, Morse offers an assignment of claims from his apparent partners or co-venturers,[5] an assignment which the Bellest defendants, in turn, challenge for lack of specificity (citing failure to identify the cause of action and the business to which the assignment refers), failure to include a third venturer and failure to indicate the assignment as the basis for this suit. Bellest Defendants' Memorandum at 5–6. Their charges are insufficient, however, to demonstrate the invalidity of the assign-

---

*Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

**5.** The assignment states that the assignors hereby assign to the assignee their entire, [sic] right, title and interest in and to that certain incorporated business formed to distribute Pierre Cardin lighters in the United States, including but not limited to certain causes of action against Pierre Cardin, Pierre Cardin (USA), Pierre Cardin Distributing Office Swank, Inc. [sic] and other related entities and individuals.

The assignment includes "all actions, causes of action, suits, debts, dues, sums of money, damages, judgments, agreements, promises, claims and demands whatsoever." Assignment of Claims to Marvin W. Morse, dated July 1, 1977, appended as Exhibit K to Breindel Affidavit.

ment as a matter of law. New York law, to which the Court must look to measure the effectiveness of the assignment, does not take a rigid view of assignments. As long as the claim can be transferred, "the transfer . . . passes an interest, which the transferee may enforce by an action." N.Y. Gen. Oblig. Law § 13–105 (McKinney 1978). "Any claim or demand can be transferred," *id.* § 13–101, unless it runs afoul of certain exceptions that defendants have not shown to be applicable. At best the challenges to the assignment merely point to factual matters unclear on the record.

*Antitrust Cause of Action*

Morse sues all five defendants for a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (as amended).[6] To show such a violation, Morse relies partly on the alleged breach of the purported Morse-Cardin agreement, a breach allegedly committed at the request of and pursuant to an agreement with Swank, Morse's prospective competitor. Breindel Affidavit ¶ 4. The defendants deny not only any combination or inducement to breach, but also the very existence of a Morse-Cardin agreement. Cardin Defendants' Memorandum at 4; Bellest Defendants' Memorandum at 3–4. In rebuttal, Morse notes the absence of affidavits from, among others, Cardin and Duquesnoy, those in the best position to refute the existence of a Morse-Cardin agreement. Breindel Affidavit ¶ 13.

Morse further bolsters his claim that Swank was acting behind the scenes to bar him from competition by emphasizing Swank's belated interest in selling Pierre Cardin lighters, an interest that purportedly arose only after the alleged Morse-Cardin agreement and ten years after Swank could have begun to merchandise lighters. Swank shows its long-standing interest in selling that product by offering price lists obtained from potential suppliers of lighters; both lists are dated before the Morse-Cardin negotiations. Tulin Affidavit, Exhibits A, B.

Giving Morse the benefit of all inferences on the record, as the Court must do on a motion for summary judgment, Swank's interest, although aroused earlier than Morse alleged, may possibly have ripened only in response to Morse's preparing to sell and selling Pierre Cardin lighters in or to duty-free shops in the United States; indeed, as of this complaint, Swank has not yet sold Pierre Cardin lighters in the United States. Cardin Defendants' Reply Memorandum at 5. What motivated Swank's renewed interest is an issue of fact not resolved on the record as it stands.

The defendants rely principally on the 1967 Swank-Cardin Agreement to establish that the Cardin defendants were bound to Swank on the lighter license; from this they argue that they acted innocently, pursuant to agreement, and not in anticompetitive collusion to bar Morse from the market in Pierre Cardin lighters. Morse responds, however, that because the 1967 Agreement is nonexclusive as to high-priced items—*i. e.,* jewelry, including lighters, to retail for more than $75.00, 1967 Agreement ¶ 1— Cardin could have granted a license to Morse without violating the 1967 Swank-Cardin Agreement. Breindel Affidavit ¶¶ 15–16.

Defendants also support their antitrust defense by asserting that Cardin can license whomever he wishes to exploit the Pierre Cardin trademark. They are correct to the extent that a licensor or manufacturer may refuse to begin a new relationship or to terminate an old one—notwithstanding harm to the distributor or prospective distributor—providing that there is no combination or conspiracy restraining competition. *E. g., United States v. Colgate,* 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (1919); *Oreck Corp. v. Whirlpool Corp.,* 579 F.2d 126, 133 (2d Cir. 1978) (*en banc*); *House of Materials, Inc. v. Simplicity Pattern Co.,* 298 F.2d 867 (2d Cir. 1962); *Bay City-Abrahams Brothers, Inc. v. Estee*

**6.** Section 1 reads in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

*Lauder, Inc.,* 375 F.Supp. 1206, 1214–17 (S.D.N.Y.1974), and cases cited therein. One prohibition under the "restraining competition" rubric is a combination or conspiracy to restrain *competitors. United States v. General Motors Corp.,* 384 U.S. 127, 140, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966); *Bowen v. New York News, Inc.,* 522 F.2d 1242, 1257 (2d Cir. 1975), *cert. denied,* 425 U.S. 936, 96 S.Ct. 1667, 48 L.Ed.2d 177 (1976); *Jacobson & Co. v. Armstrong Cork Co.,* 433 F.Supp. 1210, 1213–14 (S.D.N.Y.1977).[7]

On the factual questions whether there was a combination or conspiracy and whether it had the intent or effect of restraining competition, Morse has so far provided meager support. The Court is mindful, however, of the Supreme Court's caution concerning summary judgment in antitrust cases: "We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962) (footnote omitted). The instant case cannot be thought of as complex antitrust litigation, but motive and intent are key questions, and the answers are in the hands of the alleged coconspirators. Accordingly, Morse should have the opportunity to pursue his claims through discovery, and the defendants' motions for summary judgment on the antitrust cause of action are denied with leave to renew after completion of discovery. Morse, by further discovery, including but not limited to depositions of Swank officials and Max Bellest, shall "set forth specific facts" as to the alleged combination or conspiracy among the defendants. A fortiori, the motion to vacate the notice of deposition of Bellest is denied.

## Breach of Contract

Summary judgment is also denied on the breach of contract cause of action. The principal question—whether the parties intended a binding agreement, *C. M. Gridley & Sons, Inc. v. Northeastern Consolidated Co.,* 36 A.D.2d 1001, 321 N.Y.S.2d 171 (3d Dep't 1971)—is unclear on the record. Although parties may withdraw from mere negotiations with impunity, *Brause v. Goldman,* 10 A.D.2d 328, 199 N.Y.S.2d 606 (1st Dep't 1960), *aff'd,* 9 N.Y.2d 620, 210 N.Y. S.2d 225, 172 N.E.2d 78 (1961), this Court cannot say as a matter of law that the Morse-Cardin negotiations had not ripened into a contract. The absence of a formal contract and the continuing negotiation, at least as to the prospective suppliers of the Pierre Cardin lighters, on which basis the

---

**7.** The Cardin defendants make an oblique allegation that the sale or non-sale of Cardin lighters could not affect prices in the market. Cardin Defendants' Reply Memorandum at 5. The import of the allegation is unclear, but it is incorrect to the extent that it suggests that the apparent absence of the price competition factor removes this case from the reach of the Sherman Act. *See United States v. General Motors Corp., supra* (restraint upon price competition inherent in the combination was an additional factor in condemning defendants' actions). That price competition not now implicated in the instant case, however, will preclude resort to the *per se* rule, at least on the basis of price, and make Morse's problems of proof far more difficult. *See General Motors, supra,* 384 U.S. at 147, 86 S.Ct. 1321; *Oreck Corp. v. Whirlpool Corp., supra,* at 130.

*Oreck Corp.,* a recent *en banc* decision of the Second Circuit, mandates resort to rule of reason, rather than *per se,* analysis in cases of vertical agreements to protect distributors from competition. In *Oreck Corp.,* Whirlpool, manufacturer of vacuums, and Sears, Roebuck & Co. ("Sears"), Whirlpool's principal distributor, allegedly agreed that the agreement with Oreck, another distributor, should be terminated. The court of appeals concluded that the vertical agreement, even with the purpose or effect of removing Sears' competitor, could not alone amount to a violation of Section 1 of the Sherman Act. To do so, the agreement must be "anticompetitive in purpose or effect," a phrase the Second Circuit interprets to refer to its effect on the industry *as a whole,* not the effect on the excluded competitor alone. *Id.,* at 133. To have shown a violation, *Oreck Corp.* would have to have established that the alleged agreement to exclude it either promoted a Whirlpool monopoly in the vacuum cleaner industry or gave Sears a market position that enabled it to raise prices even with interband competition. *Id.* at 130 n. 5. Whether *Oreck Corp.* can be properly distinguished from the case at bar depends on the record as it evolves in this case.

Cardin defendants attack this cause of action, do not preclude the meeting of minds necessary to constitute a binding agreement. References to the parties' choice of terms in the correspondence between them do not clearly establish whether or not an agreement had been reached. The defendants have provided no authority that disposes of this question.

## Tortious Interference

■ As to Morse's third cause of action, the Bellest defendants suggest elliptically that there can be no tortious interference because of the 1967 Swank-Cardin Agreement, Schwartz Affidavit, sworn to January 11, 1978, ¶ 4, apparently reasoning that because of that allegedly exclusive agreement, Cardin and Morse could not have reached a separate agreement, and ergo that there could not have been a Morse-Cardin agreement with which to interfere. Assuming arguendo that is the case, the cause of action is viable because the tortious interference prohibition extends to mere negotiations. *Union Car Advertising Co. v. Collier,* 263 N.Y. 386, 401, 189 N.E. 463, 469 (1934); *Muller v. Star Supermarkets, Inc.,* 49 App.Div.2d 696, 370 N.Y.S.2d 768 (4th Dep't 1975); *Hardy v. Erickson,* 36 N.Y.S.2d 823, 825 (Sup.Ct. 1942). "The principle underlying the rule is that he who has a reasonable expectancy of a contract has a property right which may not be invaded maliciously or unjustifiably." *Id.* at 826.

■ Whether the Bellest defendants and Swank maliciously interfered with Morse's negotiations or contract with Cardin is a factual question. The answer rests in the hands of the defendants; Morse should have the opportunity through discovery to gain what proof he needs to establish his claim. The proof that will make or break his cause of action may well be revealed in deposing the defendants on the antitrust theory and its conspiracy element. Morse must attempt to establish, if defendants did interfere, whether they did so maliciously and by what means, *see Susskind v. Ipco Hospital Supply Corp.,* 49 A.D.2d 915,

373 N.Y.S.2d 627 (2d Dep't 1975), and whether they had justification for interfering. *See Felsen v. Sol Cafe Manufacturing Corp.,* 24 N.Y.2d 682, 301 N.Y.S.2d 610, 249 N.E.2d 459 (1969). Questions of fact remaining to be addressed, summary judgment on this cause of action is denied.

## Fraud and Negligent Misrepresentations

■ Finally, as to the causes of action based on fraudulent or negligent misrepresentations, summary judgment is denied as to Pierre Cardin, but granted as to the Bellest defendants. The Cardin defendants deny an intent to defraud; they argue that a mistake was made. Cardin Defendants' Memorandum at 9. Scienter, however, includes not only knowing misrepresentations, but also reckless indifference to error, a pretense of knowledge, and the misrepresentation of a material fact susceptible of accurate knowledge, but stated as true on personal knowledge of the representer. *Coolite Corp. v. American Cyanamid Co.,* 52 A.D.2d 486, 384 N.Y.S.2d 808 (1st Dep't 1976); *Burgundy Basin Inn, Ltd. v. Watkins Glen Grand Prix Corp.,* 51 A.D.2d 140, 145–46, 379 N.Y.S.2d 873, 879 (4th Dep't 1976); *Bailey v. Diamond International Corp.,* 47 A.D.2d 363, 367 N.Y.S.2d 107 (3d Dep't 1975); *Skrine v. Staiman,* 30 A.D.2d 707, 292 N.Y.S.2d 275 (2d Dep't 1968), *aff'd,* 23 N.Y.2d 946, 298 N.Y.S.2d 727, 246 N.E.2d 529 (1969). The circumstances surrounding the representations by Herve Duquesnoy, the SARL employee, and by Cardin himself, as communicated by Duquesnoy, *see* Breindel Affidavit, Exhibit E, do not reveal themselves on the record. Those circumstances and the defendants' scienter remain factual questions unclear on the record. Defendants' arguments to the effect that the failure to perform an agreement is not fraud, Cardin Defendants' Memorandum at 9, miss the gravamen of Morse's claim and need not be addressed.

■ As to the negligence claim, the Cardin defendants assert that the cause of action must fail because the defendants owed no duty to Morse. Cardin Defendants' Memorandum at 10–11. A cause of

action for negligent misrepresentations may lie, however, "[w]hen the parties' relationship suggests a closer degree of trust and reliance than that of ordinary buyer and seller." *Coolite Corp. v. American Cyanamid Co., supra,* 52 A.D.2d at 488, 384 N.Y.S.2d at 811 (citations omitted). In *Coolite Corp.,* the court held that the formation of a new corporation created for the sole purpose of marketing a new product attested to a more intimate relationship, at least in terms of reliance and trustworthiness, than that of the ordinary buyer and seller. Morse's relationship with Cardin based on the former's lighter sales in duty-free shops, Morse Affidavit ¶ 2, the superior knowledge of the Cardin defendants as to Cardin's precise contractual relationship with Swank, and Morse's plan to form a new company to market the Pierre Cardin lighters, Morse Affidavit ¶ 8; Breindel Affidavit, Exhibit D, may support the inference of an "intimate relationship" that would invoke more rigorous obligations. They are at least sufficient bases to deny summary judgment as to the Cardin defendants.

However, summary judgment is granted the Bellest defendants on the fourth and fifth causes of action. Morse has shown only that CO referred Morse to the Cardin office in Paris to negotiate a lighter license, Morse Affidavit ¶¶ 3, 9–10, and that Bellest confirmed to Morse that the Cardin defendants had terminated negotiations with Morse. Morse asserts that "[a]s a result of Mr. Wargo [sic] [of CO] advising me to deal directly with the Pierre Cardin office in Paris I assumed that there were no existing licenses permitting anyone to sell Pierre Cardin lighters in the United States." Morse Affidavit ¶ 3. Morse's assumption is too tenuous to give rise to a cause of action in fraud or negligent misrepresentation. No actual misrepresentations are even alleged as to these defendants, and they owed Morse no duty. Further discovery on these claims would serve no useful purpose because any intimate relationship with these defendants and any alleged misrepresentations by them would be well known to Morse and not within the peculiar knowledge of the defendants.

In summary, the defendants' motions for summary judgment and a stay of deposition are denied as to all defendants on all causes of action, except that the Bellest defendants' motion for summary judgment on the fourth and fifth causes of action is granted.

So ordered.