Marvin W. MORSE, Plaintiff,

v.

SWANK, INC., Pierre Cardin, S.A.R.L. de Gestion Pierre Cardin, Max J. Bellest, and Coordinating Office, Inc., Defendants.

No. 77 Civ. 5185 (CHT).

United States District Court, S. D. New York.

June 30, 1980.

Solin & Breindel, New York City, for plaintiff; Howard Breindel, Daniel R. Solin, New York City, of counsel.

Greenbaum, Wolff & Ernst, New York City, for defendants Pierre Cardin, S.A.R.L. de Gestion Pierre Cardin, Max J. Bellest, and Coordinating Office, Inc.; Sydney J. Schwartz, New York City, of counsel.

Parker, Chapin, Flattau & Klimpl, New York City, for defendant Swank, Inc.; Mark Abramowitz, Lee W. Stremba, New York City, of counsel.

## OPINION

TENNEY, District Judge.

Marvin Morse brought this action charging (1) a violation of the antitrust laws, (2) breach of contract, (3) tortious interference with a contract, (4) fraud, and (5) negligence. The action grew out of Morse's attempt to obtain distribution rights for Pierre Cardin cigarette lighters. Early in the litigation, defendants Max J. Bellest and Coordinating Office, Inc. ("Bellest defendants") and Pierre Cardin and S.A.R.L. de Gestion Pierre Cardin ("Cardin defendants") moved for summary judgment pursu-

ant to Federal Rule of Civil Procedure ("Rule") 56. Bellest also moved individually for a stay of his deposition. By an Opinion and Order entered October 11, 1978, 459 F.Supp. 660 (S.D.N.Y.1978), the Court granted summary judgment to the Bellest defendants on the fraud and negligence causes of action. It otherwise denied the defendants all relief.

After the completion of discovery, the defendants, including Swank, Inc., moved for summary judgment on the first and third causes of action. Morse consents to an order dismissing the first and third causes of action as against Bellest, Affidavit of Daniel R. Solin, sworn to June 22, 1979 ("Solin Aff."), ¶ 2, but he otherwise opposes the motions. For the other reasons given below, the Court grants the defendants' motions for summary judgment and dismisses the first and third causes of action as against all defendants.

## BACKGROUND [1]

Morse alleges that in March 1977 he reached an agreement with the Cardin defendants giving him exclusive distribution rights in the United States for Pierre Cardin lighters. Two weeks after Morse and the Cardin defendants reached the alleged agreement, Herve Duquesnoy of S.A.R.L. de Gestion Pierre Cardin ("SARL" when referred to separately) informed Morse that the negotiations were ended because the license had been promised to Swank. Letter from Herve Duquesnoy to Mr. Worse [sic], dated Mar. 24, 1977, Exh. I to Affidavit of Howard Breindel, sworn to Feb. 16, 1978.

In his letter terminating negotiations with Morse, Duquesnoy referred to a long-standing relationship between Cardin and Swank that began at least as early as October 13, 1967 when those two parties entered a licensing agreement for the manufacture and sale of men's jewelry and related product lines. The term jewelry was understood to include lighters. The agreement gave Swank exclu-

1. The background to this action is set out at greater length at 459 F.Supp. at 662–64.

sive rights to market the specified items except, as is relevant here, "to jewelry manufactured of precious metals or containing precious stones, retailing at a price in excess of $75.00 per item." Cardin-Swank Agreement, dated October 13, 1967, ¶ 1, appended to Cardin Defendants' Motion for Summary Judgment ("1967 Agreement").[2] However, while Swank began exploring the marketing of Cardin lighters in 1975, *see* affidavit of John A. Tulin, sworn to April 1978, Exhibits A, B (letters from prospective suppliers of Cardin lighters providing requested prices) . . ., not until March 8, 1977 did Marshall Tulin, vice-president of Swank, write Pierre Cardin to tell him of Swank's decision to consider the sale of lighters as provided for in the 1967 Agreement. Two weeks later, SARL, through Duquesnoy, terminated further negotiations with Morse.

459 F.Supp. at 662–63 (renumbered footnote).

*Antitrust Cause Of Action*

■ In the first of five causes of action, Morse sues all five defendants under section 1 of the Sherman Act, 15 U.S.C. § 1 (as amended). He alleges a combination and conspiracy in restraint of trade: to bar him from distributing Pierre Cardin lighters; from competing with Swank, which distributes a line of Cardin products under its 1967 Agreement with the Cardin defendants; and to perpetuate Swank's status as the sole licensee of the Pierre Cardin name in the United States for men's jewelry and

related items. Amended Complaint ¶ 19(a)–(c). Morse claims that, to effectuate the conspiracy, the Cardin defendants [3] breached their distribution agreement with Morse and refused to deal with him, Cardin and Swank entered a distribution agreement, and Cardin attempted to have Morse deal with Swank regarding distribution rights for Pierre Cardin lighters. *Id.* ¶ 20(a)–(d). Morse alleges that among the effects of the combination and conspiracy are the following: competition in the distribution of Pierre Cardin lighters in the United States has been restrained; Morse has been prevented from distributing Pierre Cardin lighters in the United States; American consumers have been deprived of the choice of purchasing "Pierre Cardin" lighters from Morse rather than other lighters sold by Swank; competition in the use of the name Pierre Cardin on jewelry and related items has been suppressed; and Swank's status as the sole licensee of Pierre Cardin jewelry and related items in the United States has been perpetuated. *Id.* ¶ 21(a)–(e).

In addressing the previous summary judgment motions, the Court concluded, *inter alia*, that

[o]n the factual questions whether there was a combination or conspiracy and whether it had the intent or effect of restraining competition, Morse has so far provided meager support. The Court is mindful, however, of the Supreme Court's caution concerning summary judgment in antitrust cases: "We believe that summa-

---

**2.** An agreement amending the original agreement was reached on May 25, 1976. Although the new agreement altered the terms of the exclusivity, it retained a price demarcation between exclusive and nonexclusive items. The penultimate sentence of ¶ 1 of the 1967 Agreement (quoted in the text, *supra*) was amended to read:

Notwithstanding the foregoing, the license hereby granted with respect to sterling silver men's jewelry is hereby limited to exclude such jewelry retailing at normal mark-up for $55 or more during the period ending April 12, 1978, $60 or more during the period April 13, 1978 through April 12, 1980, and $65 or more after April 12, 1980.

Swank-Cardin Amended Agreement, dated May 25, 1976, ¶ 1(d), at 3, appended to Bellest Defendants' Motion for Summary Judgment.

459 F.Supp. at 663 n. 1.

**3.** In his second cause of action, Morse sues Cardin and SARL for breach of contract. Amended Complaint ¶¶ 5, 24. In its last Opinion and Order in this case, the Court incorrectly indicated that the second cause of action was against Pierre Cardin alone. 459 F.Supp. at 663 & n. 3. The Court will consider the evidence as to this and the other remaining causes of action as if the Cardin defendants again move for summary judgment on these causes of action.

ry procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962)(footnote omitted). The instant case cannot be thought of as complex antitrust litigation, but motive and intent are key questions, and the answers are in the hands of the alleged coconspirators. Accordingly, Morse should have the opportunity to pursue his claims through discovery, and the defendants' motions for summary judgment on the antitrust cause of action are denied with leave to renew after completion of discovery. Morse, by further discovery, including but not limited to depositions of Swank officials and Max Bellest, shall "set forth specific facts" as to the alleged combination or conspiracy among the defendants.

459 F.Supp. at 666. As an indication of the "specific facts" that Morse should set out after discovery, the Court discussed *Oreck Corp. v. Whirlpool Corp.*, 579 F.2d 126 (2d Cir.)(en banc), *cert. denied*, 439 U.S. 946, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978).

> *Oreck Corp.* . . . mandates resort to rule of reason, rather than *per se*, analysis in cases of vertical agreements to protect distributors from competition. In *Oreck Corp.*, Whirlpool, a manufacturer of vacuums, and Sears, Roebuck & Co. ("Sears"), Whirlpool's principal distributor, allegedly agreed that [Whirlpool's] agreement with Oreck, another distributor, should be terminated. The court of appeals concluded that the vertical agreement, even with the purpose or effect of removing Sears' competitor, could not alone amount to a violation of Section 1 of the Sherman Act. To do so, the agreement must be "anticompetitive in purpose or effect," a phrase the Second Circuit interprets to refer to its effect on the industry *as a whole*, not the effect on the excluded competitor alone. *Id.* at 133. To have shown a violation, Oreck Corp. would have to have established that the

alleged agreement to exclude it either promoted a Whirlpool monopoly in the vacuum cleaner industry or gave Sears a market position that enabled it to raise prices even with interbrand competition. *Id.* at 130 n. 5.

459 F.Supp. at 666 n. 7.

After discovery, presumably conducted with a view to the Court's prior Opinion and Order, all defendants moved for summary judgment on the antitrust cause of action. In its motion, Swank contends that Morse has failed to raise a genuine issue of fact entitling him to a trial on this cause of action. Swank argues that Morse has failed to set forth specific facts raising a factual issue as to a combination and conspiracy or as to the market effect of the alleged combination and conspiracy. Rather, it alleges that the facts demonstrate that Swank has been distributing Pierre Cardin products continuously since reaching the 1967 Agreement with the Cardin defendants and that, in 1977, Swank decided to reenter, under the 1967 Agreement, the market in cigarette lighters after a five-year absence. Swank Memorandum at 15–16; Affirmation of Lee W. Stremba, dated May 11, 1979 ("Stremba Aff."), ¶¶ 12–18; Affidavit of John A. Tulin, Vice-President of Swank, sworn to April 1978 ("1978 Tulin Aff."), ¶¶ 5–10 & Exhs., attached as Exh. C to Stremba Aff.

The other defendants adopt Swank's arguments. They also reiterate the argument that the owner of a trademark may license whomever it wishes to exploit the trademark. Swank had the license to distribute Pierre Cardin lighters under the 1967 Agreement; the Cardin defendants were not obligated to license another. They also state that the Cardin defendants, under the 1967 Agreement, retained only advertising and quality control. Memorandum of Defendants Other Than Swank at 1–4.

Morse responds that Swank's motivation for its renewed interest in marketing Pierre Cardin lighters is an issue of fact that may not be resolved on the basis of conflicting affidavits. He contends that he has set

forth "ample evidence from which a jury could find a combination and conspiracy to exclude Morse from the licensing of products bearing the Pierre Cardin name for the sole purpose of eliminating Morse as a competitor of Swank." Morse Memorandum at 3; *see* Solin Aff. ¶¶ 6–24. Swank waited ten years to exercise its rights regarding lighters under the 1967 Agreement. *Id.* ¶ 6, 8. Swank had ample motivation to prevent Morse from becoming a competitor because Swank's licenses from the Cardin defendants are lucrative. *Id.* ¶ 7. SARL's terminating negotiations with Morse two weeks after Swank's declaration of its renewed interest in Cardin lighters is highly suspicious. *Id.* ¶ 9. In Morse's view, the jury could doubt the testimony of Swank officers regarding Swank's belated decision to exercise its right to market Pierre Cardin lighters. *Id.* ¶¶ 10–15. Swank has not made a bona fide effort to promote sales of its Pierre Cardin lighters. *Id.* ¶¶ 16–17. Morse contends that the record provides ample evidence that Swank learned of the Morse-Cardin negotiations, which prompted Swank to exercise its right to market the lighters. *Id.* ¶¶ 19–21. Finally, he argues, the jury could reject as unworthy of belief Duquesnoy's testimony regarding the manner in which he learned of the 1967 Agreement. *Id.* ¶ 22.

At the outset the Court concludes that Morse has not raised a genuine issue as to the validity of the 1967 Agreement between Swank and the Cardin defendants. Under that agreement, Swank has exclusive rights to market Pierre Cardin lighters in the United States, except as to lighters made of precious metals retailing for more that $75 or, where sterling silver, "retailing at normal mark-up for $55 or more during the period ending April 12, 1978, $60 or more during the period April 13, 1978 through April 12, 1980, and $65 or more after April 12, 1980." *See* discussion from 459 F.Supp. at 662–63 & n. 1, quoted in text & n. 2 *supra.* Morse argues that "irrespective of the existence of the Swank agreement, Cardin could have issued a nonexclusive license to plaintiff for Pierre Cardin lighters" retailing in excess of the amounts stated

above. Solin Aff. ¶ 5. "Moreover, . . Swank's ten year failure to promote Cardin lighters clearly breached its agreement and gave Cardin and S.A.R.L. the right to void that portion thereof and to honor its agreement with Morse." *Id.*

As to Morse's argument that Cardin could have granted him a license for high-priced lighters, Swank responds that the argument is irrelevant because Morse never sought such a license. Rather, Morse sought, and allegedly obtained, "the exclusive right to sell and distribute lighters bearing the 'Pierre Cardin' name in the United States." Amended Complaint ¶ 11(a). Morse reduced his intent to a proposal, or "motive," which he submitted to SARL and to investors, Deposition of Marvin W. Morse, taken Jan. 18 & Feb. 15, 1979, at 23–24, 31–32. The proposal states in part:

*MOTIVE*

To establish an import and U.S. marketing business based on PC trademark. Other suitable products will be included with the approval of the Board of Directors.

*PRODUCT*

P.C. Cigarette Lighters

P.C. Cigarette Cases

P.C. Wallets and other Leather Goods Market study indicates competition at high end with Dunhill, Dupont, Tiffany. Low end with Calibri, Ronson, Prince. We intend to be mid-priced from $40.00 to $85.00 between both markets.

Exh. B to Swank Reply Memorandum. This proposal and Amended Complaint ¶ 11(a) demonstrate that Morse was not seeking a nonexclusive license for high-priced lighters, or even limiting himself to lighters, but he conceivably could have been granted, as he argues, a license for high-priced lighters. The 1967 Agreement between Swank and Cardin and its amendment do not exclude such a possibility.

All defendants respond to Morse's argument that Swank breached its 1967 Agreement with the Cardin defendants by not marketing the lighters over a ten-year period. Swank states that the argument is

incorrect, irrelevant, and outside the allegations of the Amended Complaint. The other defendants add, *inter alia*, that "it would have been an act of complete insanity on the part of Cardin to terminate Swank's entire license because of the failure to exploit a minimal and inconsequential segment of the [1967 A]greement." Reply Affidavit of Sydney J. Schwartz, sworn to June 27, 1979, ¶ 7. The Court concludes that Morse's allegation of a Swank breach of the 1967 Agreement is unsupported, of doubtful relevance, and does not otherwise provide "specific facts" supporting Morse's antitrust cause of action. The Court will not pursue this argument further.

The question is thus reduced to whether Morse can support his cause of action as to lighters priced above those covered by the Swank-Cardin 1967 Agreement and its amendment. See text & n. 2 *supra*. For Morse to do so, he must raise genuine issues of fact as to whether the defendants contracted, combined, or conspired in restraint of trade. 15 U.S.C. § 1. The Court concludes that Morse has not raised an issue as to any restraint of trade.

Most of Morse's arguments are addressed to allegations of suspicious circumstances from which a jury could infer the existence of a conspiracy. The Court will not address these allegations as to the antitrust cause of action because, even if they are true and are a sufficient basis for inferring a conspiracy, Morse has failed to raise an issue of fact as to a restraint of trade. As stated above, *Oreck Corp., supra*, requires proof of an anticompetitive purpose or effect in the industry, there vacuum cleaners, here cigarette lighters. Morse has offered no evidence as to the effect of the alleged conspiracy on the industry. Moreover, frequent references in the record to various sources of supply for cigarette lighters make it clear, in the absence of any contrary evidence, that Morse would not be excluded from the cigarette lighter business. Rather, he would only be prevented from marketing Pierre Cardin lighters, which, according to his own proposal to SARL, had "competition at high end with Dunhill, Dupont, Tiffany [and at l]ow end

with Calibri, Ronson, Prince." Motive, Exh. B to Swank Reply Memorandum. He provides no basis for concluding that Pierre Cardin lighters are a market by themselves. Rather than providing evidence of the market effect of the alleged conspiracy, Morse argues that because *Oreck Corp.* requires resort to a rule of reason in cases of vertical restraints, summary judgment is inappropriate. He has provided, however, no specific facts against which, under a rule of reason standard, the alleged violation could be evaluated.

The *Oreck Corp.* requirement that a plaintiff establish an anticompetitive effect on the industry was recently reiterated by the Second Circuit in *Borger v. Yamaha Internat'l Corp.*, 625 F.2d 390, 396–397 (2d Cir. 1980). In *Borger,* the court of appeals reversed and remanded a judgment entered against the defendant for violations of section 1 of the Sherman Act. The trial judge had instructed the jury that if the plaintiffs were qualified to be a Yamaha dealer and if Yamaha's sole purpose in denying them a dealership was to protect its other distributors from competition, then any agreement would be an unreasonable restraint of trade in violation of section 1 of the Sherman Act. *Id.* at 396. In rejecting that charge, the court of appeals stated that "the Court [in *Oreck Corp.*] clearly intended that the anticompetitive purpose or effect of the vertical restriction in that case had to be judged with respect to the vacuum cleaner industry as a whole, not simply that portion which handled the Whirlpool brand." *Id.* at 397. Even if Morse could establish that the defendants conspired to prevent him from marketing Pierre Cardin lighters, he could not prevail on this cause of action because he has provided no evidence on which the anticompetitive effect in the industry could be judged. The defendants' alleged purpose of excluding Morse is by itself an insufficient basis for submitting this antitrust cause of action to a jury. Morse was required to produce significant probative evidence in support of this cause of action. Rule 56(e); *First National Bank*

*of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968); *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.*, 614 F.2d 832, 833, 839–40 (2d Cir.1980). He has failed to do so. "[A] properly instructed jury, giving full weight to plaintiff's evidence, drawing every reasonable inference in its favor, and subjecting defendants' evidence to a critical eye, could not rationally have found that plaintiff was entitled to any relief." *Ambook Enterprises, a/k/a American Book Club v. Time Inc.*, 612 F.2d 604, 611 (2d Cir.1979), *petition for cert. filed*, 48 U.S. L.W. 3715 (U.S. Apr. 21, 1980) (footnotes omitted); *Nifty Foods Corp., supra*, 614 F.2d at 839. Accordingly, Morse's antitrust cause of action is dismissed as against all defendants.

*Tortious Interference*

In its prior Opinion and Order, the Court denied defendants' motions for summary judgment on Morse's third cause of action. Under this cause of action, Morse seeks to recover damages for injuries resulting from Swank's alleged interference with Morse's contractual relations with the Cardin defendants. The Court rejected a suggestion that the cause of action must fail if Morse and the Cardin defendants did not reach an agreement. It reasoned that, under New York law, "the tortious interference prohibition extends to mere negotiations." 459 F.Supp. at 667 (citations omitted). The Court then concluded:

> Whether the Bellest defendants and Swank maliciously interfered with Morse's negotiations or contract with Cardin is a factual question. The answer rests in the hands of the defendants; Morse should have the opportunity through discovery to gain what proof he needs to establish his claim. The proof that will make or break his cause of action may well be revealed in deposing the defendants on the antitrust theory and its conspiracy element. Morse must attempt to establish, if defendants did interfere, whether they did so maliciously and by what means, *see Susskind v. Ipco Hospital Supply Corp.*, 49 A.D.2d 915, 373 N.Y. S.2d 627 (2d Dep't 1975), and whether

they had justification for interfering. *See Felsen v. Sol Cafe Manufacturing Corp.*, 24 N.Y.2d 682, 301 N.Y.S.2d 610, 249 N.E.2d 459 (1969).

459 F.Supp. at 667.

In *Felsen, supra*, one defendant contended that it was privileged to interfere with a contract because it had an existing economic interest to protect. The Court of Appeals of New York found sparse, but persuasive support for this contention. "Stated more generally, 'Procuring the breach of a contract in the exercise of an equal or superior right is acting with just cause or excuse, and is justification for what would otherwise be an actionable wrong.'" *Id.*, 24 N.Y.2d at 687, 301 N.Y. S.2d at 613, *quoting Knapp v. Penfield*, 143 Misc. 132, 134–35, 256 N.Y.S. 41, 44 (Sup.Ct. 1932); *see Fury Imports, Inc,. v. Shakespeare Co.*, 554 F.2d 1376. (5th Cir.1977). The privilege applies to both inducement to breach a contract and to interference with precontractual relations. *Felsen, supra*, 24 N.Y.2d at 687, 301 N.Y.S.2d at 613. The Court concludes that Swank's interference, to the extent it occurred, was privileged. Morse has not raised a genuine issue as to the wrongfulness of any interference by Swank in whatever agreement or relations Morse had with the Cardin defendants.

Morse sets forth numerous circumstances from which he believes a jury could infer tortious interference. These circumstances concern the motive behind Swank's reentry into the lighter market, how Swank learned of the Morse-Cardin negotiations, and how Duquesnoy of SARL learned of the 1967 Swank-Cardin Agreement. See Morse's arguments under antitrust discussion. The record also contains the following letters. On March 8, 1977, Swank, wrote Pierre Cardin:

> We have recently reviewed our contracts with you and have noticed that Swank was granted the license to sell Pierre Cardin cigarette lighters in the United States and its possessions.

> We feel that the time is now opportune for us to consider the sale of lighters as provided for in our agreement.

Letter from Marshall Tulin to Pierre Cardin, Exh. B to 1978 Tulin Aff. Shortly thereafter, Swank wrote again.

It has come to my attention that a Japanese concern is exporting lighters and cigarette cases for distribution within the United States as is evidenced by the enclosed ads.

By doing so, these Japanese firms are in direct violation of our agreement with you which grants us the license for distribution of these products within the United States.

I would appreciate your taking whatever steps that are necessary to prevent the further sale of these items with the United States by these Japanese firms.

Letter from Marshall Tulin to Pierre Cardin, dated Mar. 22, 1977, attached to Affidavit of Sydney J. Schwartz, sworn to June 13, 1979. Neither the circumstances described by Morse nor the letters raise an issue of fact as to the wrongfulness of or lack of justification for Swank's alleged interference with Morse's contractual or precontractual relations with the Cardin defendants. As decided above, Swank had the exclusive license, under certain price demarcations, to distribute Pierre Cardin lighters in the United States. It had a contract right superior to any other distributor or potential distributor within those price limits. As such, it had the privilege to complain about a Cardin-Morse agreement or negotiations for rights already given to Swank. Although the 1967 Agreement and its amendment do not preclude the Cardin defendants giving a nonexclusive license for high-priced lighters to Morse, Swank would not have been acting wrongly in assuring itself that Cardin did not breach its agreement with Swank. This conclusion is particularly apt in view of Morse's proposal, or "motive," quoted above, which indicates that Morse sought a license for Pierre Cardin lighters that fell within Swank's 1967 Agreement with Cardin. Moreover, the record provides no evidence of Swank's use of unlawful means from which a jury could conclude that Swank's interference, to the extent it existed, was not privileged or was otherwise wrongful. Accordingly, Swank's

motion for summary judgment is also granted as to this cause of action.

## CONCLUSION

Morse consents to an order dismissing the first and third causes of action as against Bellest. The Court concludes that Morse has failed to raise genuine issues of fact that would entitle him to a trial of the first and third causes of action as against any defendant.

Accordingly, the Court grants the defendants' motions for summary judgment and dismisses the first and third causes of action as to all remaining defendants.

So ordered.