CLUB CHAIN OF MANHATTAN, LTD., Appellant-Respondent, v CHRISTOPHER & SEVENTH GOURMET, LTD., et al., Respondents-Appellants.

First Department, May 8, 1980

## APPEARANCES OF COUNSEL

*C. Carrington Boggan* of counsel *(Boggan & Thom,* attorneys), for appellant-respondent.

*Stephen Ross* of counsel *(Razis & Ross, P. C.,* attorneys), for respondents-appellants.

## OPINION OF THE COURT

SULLIVAN, J.

In May of 1978, plaintiff, Club Chain of Manhattan, Ltd., purchased a health club and bathhouse known as "Man's Country", at 28 West 15th Street in Manhattan, and, as part of the transaction, succeeded to the seller's leasehold interest in billboard space atop a building situated nearby at Sheridan Square. By lease dated March 21, 1977, Christopher & Seventh Gourmet, Ltd. (Christopher), the lessee of the entire Sheridan Square building, had rented two billboards to plaintiff's assignor for a period of five years from April 1, 1977, at a monthly rental of $400. The lease provided that either party could terminate on 90 days' written notice. After its purchase of the health club plaintiff continued to use the billboards to advertise "Man's Country" and Christopher accepted its rent payments.

The following summer Christopher, dissatisfied with the $400 monthly rental, notified plaintiff that it wanted to renegotiate the lease. With a view toward that end, representatives of the parties met in August of 1978. Wetanson, Christopher's president, insisted that unless plaintiff agreed to pay the higher rent then being demanded, Christopher would invoke the lease's cancellation provision.

Plainiff contends that this meeting produced a new billboard lease, without a 90-day cancellation provision, but at a rental of $600 per month with yearly escalations thereafter for the balance of the lease, which was to commence October 1, 1978, and to be coextensive with Christopher's own underlying lease in the premises.

Plaintiff further contends that pursuant to agreement, its attorneys prepared and forwarded the new lease encompassing these terms to Wetanson and his attorney to review and to insert the exact termination date of Christopher's own lease to the premises, which Wetanson had represented to be approximately seven and one-half years from August, 1978. The letter of transmittal to Wetanson, dated September 1, 1978, stated "I believe the new lease contains all the provisions we discussed and agreed upon." It further stated "In addition, at my client's request, I have included two further provisions which we could not review with you first due to your present absence

from the City." These provisions afforded a right to sublet conditioned upon the lessor's approval, for the refusal of which the lessee could terminate upon proper notice; and for a pro rata allocation of the rent in the event of the destruction of one of the billboards and continued use of the other. Inasmuch as plaintiff concedes that the parties never agreed upon these provisions, it does not seek enforcement of them as part of the oral lease agreement allegedly reached at the August 1978 meeting.

At the insistence of Christopher and Wetanson, plaintiff began to pay the higher rental of $600 as of October 1978 and continued to do so through September, 1979, when Christopher, demanding still another rent increase, rejected plaintiff's tender of rent. Despite numerous inquiries of both Wetanson and his attorney, Christopher never returned the lease agreement in executed form.

Four months after plaintiff had increased its monthly rent payments to $600, Christopher, by written notice dated January 29, 1979, directed plaintiff to pay all rentals due "under *your* lease with [Christopher]" (emphasis added) to Wetanson individually "until further written notice." For the next five months plaintiff paid the higher rental to Wetanson, as directed. In June of 1979 Wetanson informed plaintiff that Christopher wanted an increase in rent for the billboard space to at least $1,000 per month for the uppermost billboard alone. Wetanson also requested plaintiff to relinquish its rights to the lower billboard so that Christopher could lease the space to others. According to plaintiff, Wetanson advised that unless it agreed to such a proposal, Christopher would terminate the lease pursuant to the cancellation provision. Plaintiff refused, asserting that the August 1978 fixed-term lease agreement did not afford Christopher a unilateral right to cancellation, and Wetanson then, for the first time, informed it that Christopher had never signed the lease because he had never intended to bind the lessor to a lease which would not allow it the unilateral right of cancellation.

Attempts to reach a compromise settlement of the dispute were unsuccessful, and by letter addressed to plaintiff's predecessor under the 1977 lease, Christopher gave notice of its election to terminate, effective 90 days from receipt of the notice.

Plaintiff thereafter commenced this action against both Christopher and Wetanson, seeking declaratory and injunctive

relief against Christopher, as well as specific performance of the lease terms to which the parties allegedly agreed in August, 1978, or, alternatively, damages as a result of both defendants' fraud. When plaintiff moved for a preliminary injunction, defendants cross-moved for dismissal of the four causes of action pleaded and for summary judgment declaring that the purported August 1978 lease agreement was void and unenforceable under the Statute of Frauds.

Special Term granted the cross motion to the extent of declaring the alleged lease agreement of August, 1978 void and unenforceable, by consequence of which it dismissed the first two causes of action seeking equitable relief, and, in light of its determination as to the first and second causes of action, denied, as academic, the application for a preliminary injunction. The cross motion addressed to the sufficiency of the third and fourth causes of action alleging fraud was denied. Both sides thereafter appealed, plaintiff from the dismissal of the first two causes of action, the declaration in Christopher's favor and the denial of a preliminary injunction. Defendants cross appeal from the denial of their motion to dismiss the third and fourth causes of action.

In reaching its determination Special Term found fatal the absence of a written lease signed by Christopher embodying the terms of the agreement alleged to have been reached by the parties in August, 1978.* It rejected plaintiff's argument that a sufficient showing had been made to raise a factual issue on the question of the enforceability of the alleged August 1978 lease agreement on the basis of part performance.

■ In our view, the allegations set forth in the moving affidavits, when measured against Christopher's acceptance of the new rent of $600, as well as its failure to return or reject the written lease, create a factual controversy on the issue of part performance which precludes summary judgment. While the Statute of Frauds is a bar to an action on a contract which requires a writing, it will not prevent a court of equity from enforcing an oral contract where part performance has taken place and nonenforcement will result in injustice. (See General Obligations Law, § 5-703, subd 4, which provides "[n]oth-

---

* Subdivision 2 of section 703 of the General Obligations Law provides "A contract for the leasing for a longer period than one year * * * of any real property * * * is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged".

ing in the section abridges the powers of courts of equity to compel the specific performance of agreements in case of part performance.")

In support of its argument that part performance removes the alleged August 1978 agreement from the proscription of the Statute of Frauds, plaintiff urges that after negotiating a new agreement and preparing and delivering a written lease incorporating the terms upon which the parties had agreed, it paid, at defendants' insistence, in good faith reliance upon that agreement and in accordance with the underlying terms, the higher rental for which the agreement provided. Defendants contend, on the other hand, that the increased rental was no more than an exchange for Christopher's forebearance from exercising its right of cancellation under the March 21, 1977 lease.

Certainly, in a market free of legal controls, as here, a landlord with the unilateral right to terminate a lease may, at any time, demand a higher rental as the price for continuing the lease. Equally certain, however, is that a tenant, if it so chooses, may refuse to renegotiate and accept termination, or, it may agree to the higher rental but exact as a concession, so as to avoid repetition of the demand for a rent increase, a lease which does not permit the landlord the unilateral right of cancellation. The unresolved question here then is whether the higher rent was fixed as a result of the negotiation of a new lease which did not allow the landlord the unilateral right of cancellation or was merely in consideration of Christopher's forebearance from terminating the March 1977 lease.

We are not unmindful of the admonition that part performance must be "unequivocally referable" to the purported agreement in order to create an enforceable oral agreement (*Burns v McCormick,* 233 NY 230, 232; see, also, *Woolley v Stewart,* 222 NY 347). However, events contemporaneous with plaintiff's payment of the increased rental suggest the existence of a bona fide issue as to whether it was pursuant to a new lease agreement reached in August, 1978. Plaintiff's preparation of a written lease and the terms of that lease militate against defendants' version of the August 1978 negotiations, as does the September 1, 1978 transmittal letter, which stated that the written lease contained all the terms upon which the parties agreed, except for two provisions they had not previously discussed. In contrast, Christopher fails to point to any oral or written communication to plaintiff at the time

the rent was increased to the effect that the increase was out of forebearance, and not because a new agreement had been reached.

While, as defendants correctly point out, "[t]he payment of money is not enough" to constitute part performance (*Rosenwald v Goldfein,* 3 AD2d 206, 210, rearg and lv to app den 3 AD2d 744), other acts, such as possession or improvements, when combined with the payment of rent, may be sufficient (*id* at 210, citing *Russell v Briggs,* 165 NY 500, 505; Williston, Contracts, § 494). That plaintiff undertook to change the artwork on the billboards is of some significance in determining whether its payment of the higher rental was made in good faith belief on its part that a new lease had been entered. Plaintiff argues that it would not have undertaken a redesign of the artwork if Christopher could terminate the lease on 90 days' notice. Of course, the nature and quantity of the artwork await exploration at trial.

Finally, it is uncontroverted that on Janaury 29, 1979, four months after plaintiff began paying the higher rent, Christopher requested, in writing, that "all rentals under your lease" be paid to Wetanson. Thus, an issue is raised as to whether Christopher did not, in fact, acknowledge the existence of a new lease.

Without a full exposition of the parties' evidence on these issues we cannot conclude, as Special Term did, that the payment of the higher rent was not exclusively referable to a new lease agreement. In so holding, we do not intimate any view as to the merits of the case. On a motion for summary judgment, "[i]ssue-finding, rather than issue-determination, is the key to the procedure." (*Esteve v Abad,* 271 App Div 725, 727; see, also, *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404.)

We do note, however, that "a court of equity will not permit a statute made for the prevention of frauds to be used as an instrument of fraud." (*Thompson v Simpson,* 128 NY 270, 287; see, also, *Walter v Hoffman,* 267 NY 365; *Canda v Totten,* 157 NY 281, 287.) Thus, even if it be determined that the parties had not reached agreement on the lease terms in August, 1978 and the written lease prepared and sent by plaintiff is considered as no more than an offer, if plaintiff was induced to pay the higher rent by defendants' silence or their equivocal action after receipt of the written lease Christopher should not be permitted to avoid its obligations by raising the

Statute of Frauds as a defense. The proposition that a party cannot be held to contract where he has not assented is a fundamental principle of law. (*More v New York Bowery Fire Ins. Co.,* 130 NY 537, 545.) While silence, of itself, does not constitute an acceptance absent a duty to speak, where it is inconsistent with honest dealings and misleads another, then the silence may be deemed to be an acquiescence. (*Matter of Albrecht Chem. Co. [Anderson Trading Corp.],* 298 NY 437, 440; *Matter of Tanenbaum Textile Co. v Schlanger,* 287 NY 400, 404; *Brennan v National Equitable Inv. Co.,* 247 NY 486, 490.)

There remain only the issues of plaintiff's right to a preliminary injunction restraining defendants from removing its artwork from the billboards and prohibiting Christopher from leasing the billboards to others, and the propriety of the subject of the cross appeal, the denial of the motion to dismiss the fraud causes of action.

■ At this juncture plaintiff is not entitled to injunctive relief. The same issues that preclude the grant of summary judgment are sufficient to warrant denial of this relief, the effect of which would be the enforcement of the lease without any clear showing of a likelihood that plaintiff will prevail. (See *Town of Porter v Chem-Trol Pollution Servs.,* 60 AD2d 987.) Furthermore, even if plaintiff is found to have an enforceable lease, we are not at all satisfied that any resultant injury from its breach would be irreparable. (See *Damon Creations v James Talcott, Inc.,* 39 AD2d 677.)

■ We do not see any basis for an action in fraud and thus grant defendants' motion to dismiss the third and fourth causes of action. Under *Dung v Parker* (52 NY 494) the principle has been stated that a lease void under the Statute of Frauds cannot be used as the predicate for an action in fraud:

"A contract void by the statute is void for all purposes. It confers no right and creates no obligation as between the parties to it; and no claim can be founded upon it as against third persons. * * *

"Nor is the intent with which the defendant enters into a contract, void by the statute, which he subsequently refuses to perform, material in determining his liability upon it.

"Although he never intended to perform it, and expected that the other party would be subjected to inconvenience and loss by relying upon it, his liability is not changed.

"That a party was ignorant of the law, or that he confided in the promise of another, and acted upon it to his disadvantage, has never been held to be an answer to the statute.

"There is no contract from the violation of which damages, in a legal sense, can arise, where the agreement proved is within the statute. [Citations omitted.]

"There may be a moral wrong in refusing to perform such a contract; but the policy of the statute was protection against false claims, supported by perjury; and the hardship of a particular case should not lead to a decision which would disturb the principle upon which the statute is founded. * * *

"He cannot say he was defrauded, and make that the substantive ground of his recovery, because he had no right to rely upon a contract which, when made, the law declared to be void. If he incurred expenses on the faith of the promise, or relying upon the express assurance of the defendant that the corporation would sanction the contract, it is his misfortune; but it furnished no ground of action." (Id, at pp 496, 498-499, 500.)

The rule was followed in *Roberts v Champion Int.* (52 AD2d 773, mot for lv to app dsmd 40 NY2d 805). "Nor will plaintiff's attempt to plead a cause sounding in tort or in another form save the complaint for, 'Whatever the form of the action at law may be, if the proof of a promise or contract, void by the statute [of frauds], is essential to maintain it, there can be no recovery.' " (Citations omitted.)

No matter how artfully couched, plaintiff's allegations in support of its claim of fraud are based upon a parol promise to lease. *Rosenwald v Goldfein* (3 AD2d 206, *supra),* upon which plaintiff relies, is inapposite since, there, the plaintiff, the owner of fixtures in the premises to be demised, sought to recover money allegedly expended in reliance upon the defendants' false promise to execute a six-year lease should the plaintiff succeed in finding a tenant. Thus, unlike here, damages were not measured by the breach of a lease agreement and the enforcement of an oral lease was not at issue.

If plaintiff is successful in establishing its claim of part performance the court may, under its equity powers, fashion the appropriate relief. If it does not prevail on such theory, it should not, in avoidance of the proscription of the Statute of Frauds, be permitted to do indirectly what it cannot accom-

plish directly, that is, recover for the breach of an oral promise to lease for a period in excess of one year.

Accordingly, the order and judgment (one paper), Supreme Court, New York County (M. ALTMAN, J.), entered November 13, 1979, should be modified, on the law, so as to grant the cross motion to dismiss the third and fourth causes of action of the complaint and to reinstate and sever the first and second causes of action of said complaint and, as thus modified, affirmed, without costs and without disbursements.

MURPHY. P. J., SILVERMAN, BLOOM and YESAWICH, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on November 13, 1979, modified, on the law, so as to grant the cross motion to dismiss the third and fourth causes of action of the complaint and to reinstate and sever the first and second causes of action of said complaint and, as thus modified, affirmed, without costs and without disbursements.