OPINION OF THE COURT
C. Stephen Hackeling, J.
The above-captioned petitioner, Angelo Avitabile, moves this court via a RPAPL 731 holdover proceeding seeking to remove his nephew, Anthony Silvestri, from the real property premises located at 67 Railroad Street, Huntington Station, New York. Respondent has interposed a written answer with counterclaims alleging he has an oral lease for the subject premises for the life of his great uncle and that eviction would prejudice him and *395 unjustly benefit the petitioner by the sum of $22,419.53 worth of improvements made to the premises.
The Undisputed Facts
(1) The petitioner owns two adjacent homes located at 57 and 67 Railroad Street in Huntington Station, New York.
(2) The petitioner is approximately 87 years old, speaks English as a second language, but cannot read same and has been in poor health in recent years. The parties dispute that petitioner has suffered a recent stroke as same was never documented medically.
(3) Petitioner’s nephew, Michael Silvestri, has taken care of the bulk of the petitioner’s financial affairs including his checkbook since 1995, and is allegedly the present beneficiary designated in petitioner’s will to receive the residence at 67 Railroad Street.
(4) The respondent is Michael Silvestri’s son.
(5) Prior to December of 2001, petitioner rented the subject premises to other relatives and strangers for $700 per month. The residence had been utilized as what is best described as a “crack house” and had deteriorated to the point that it was uninhabitable with most fixtures and plumbing having been removed or broken.
(6) During the fall of 2001, Michael Silvestri asked the petitioner if his son could occupy the premises and be allowed to remain therein for the life of petitioner, upon the conditions that the respondent make the property habitable, and pay all the carrying expenses including the payment of real estate taxes and insurance expenses. There was also a vague representation that respondent would take care of petitioner and his adjacent house. Petitioner’s affirmative consent to, or complete understanding of, this arrangement is a factual controversy.
(7) Respondent changed the locks on the premises and took undisputed possession of same in December of 2001 and undertook nine months of renovations. He actually moved into the house in September of 2002.
(8) Contrary to their agreement, respondent and his father undertook to pay the real property taxes and insurance payments with petitioner’s own funds.
(9) The documents and testimony submitted indicate that respondent did make the premises habitable to respondent’s liking via an investment of $17,589 of out-of-pocket expenditures.
*396 (10) At some point after completion of the renovations, and after petitioner was required to pay his own real property taxes, the petitioner demanded that respondent pay $800 per month rent. Respondent and his father agreed to pay $500 per month rent and respondent faithfully thereafter paid same to his father who would deposit the funds in petitioner’s checking account.
(11) The parties did not peacefully coexist as neighbors for a number of the usual reasons including the parking of cars and removal of boundary vegetation. The dispute eventually led to the installation of a fence, over petitioner’s objection, with an ad hominem explanation that respondent did not consider petitioner the owner of the premises anymore.
(12) Via certified mail dated June 26, 2003, petitioner terminated respondent’s alleged “month to month” tenancy effective July 31, 2003, and commenced this holdover action via petition dated August 4, 2003. The respondent has not disputed the petitioner’s assertion that $1,000 of rent is due.
(13) After the conclusion of petitioner’s case and after the respondent and his father had finished testifying during respondent’s case, the respondent was granted a continuance to bring in additional witnesses. During the continuance, the petitioner died. Respondent was given an opportunity to present additional evidence on his behalf and declined to do so, under an assumption that the matter is moot. The court deemed respondent to have rested his case on March 5, 2004 when he failed to appear. As of this date the court is unaware of whether any letters testamentary or letters of administration have been issued to settle petitioner’s affairs.[1]
The Disputed Facts
The relevant disputed factual issues presented are:
(a) Did petitioner agree to the lifetime lease arrangement?
(b) Did the parties either fulfill or modify the lifetime lease arrangement?
The Legal Issues Presented
(1) Does the statute of frauds preclude consideration of respondent’s claim of a lifetime lease?
*397 (2) Is respondent able to avail himself of the “part performance” statute of frauds exception established under General Obligations Law § 5-703 (4)?
(3) If respondent’s lifetime lease is void as a matter of law, what kind of interest does he maintain in the premises?
(4) If respondent is dispossessed does respondent have an equitable cause of action lying in either “breach of the covenant of quite enjoyment” or “quantum meruit”?
(5) Is the District Court a court of equity under the meaning of General Obligations Law § 5-703 (4) and does this court have jurisdiction to entertain respondent’s equitable counterclaims?
The Statute of Frauds
By way of prior motion and order dated October 6, 2003, the parties litigated and the court partially decided the applicability of the statute of frauds to the instant proceeding. Generally, leases of real property in excess of one year are void as a matter of law; see, General Obligations Law § 5-703 which provides:
“§ 5-703. Conveyances and contracts concerning real property required to be in writing “1. An estate or interest in real property, other than a lease for a term not exceeding one year, or any trust or power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing. But this subdivision does not affect the power of a testator in the disposition of his real property by will; nor prevent any trust from arising or being extinguished by implication or operation of law, nor any declaration of trust from being proved by a writing subscribed by the person declaring the same.
“2. A contract for the leasing for a longer period than one year, or for the sale, of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing.
“3. A contract to devise real property or establish a *398 trust of real property, or any interest therein or right with reference thereto, is void unless the contract or some note or memorandum thereof is in writing and subscribed by the party to be charged therewith, or by his lawfully authorized agent.
“4. Nothing contained in this section abridges the powers of courts of equity to compel the specific performance of agreements in cases of part performance.”
Respondent’s counsel ably asserts the statute’s express section 5-703 (4) exception, which allows for enforcement of oral leases where it is demonstrated that there has been partial performance under the lease. This court has previously ruled that the statute of frauds is applicable to the instant case. Petitioner argues that this court is barred from considering respondent’s “partial performance” exception as it is not “a Court of Equity” as required by section 5-703 (4).
Court of Equity?
Contrary to petitioner’s position, article VI, § 16 (d) of the New York State Constitution states that “the district court shall have such jurisdiction as may be provided by law.” The only constitutional limitation is that it cannot have greater jurisdiction than the courts for the City of New York and that an action for the recovery of money other than by summary proceeding or counterclaim is limited to less than $15,000. The State Legislature’s grant of jurisdiction is contained in sections 201-213 of the Uniform District Court Act. Of particular note is section 212 which provides that “[i]n the exercise of its jurisdiction the court will have all of the powers that the supreme court would have in like actions and proceedings.” There exists little reported precedent concerning this UDCA statute, other than Silver-Ruth Inc. v Rafferty (42 Misc 2d 926 [Nassau Dist Ct 1964]) which acknowledged this court’s incidental equitable power to grant stays. However, section 212 is identical to sister statutes found in the Uniform Justice Court Act and New York City Civil Court Act and their predecessor statutes. David Siegel, Practice Commentaries (McKinney’s Cons Laws of NY, Book 29A, UJCA 212, at 320) indicates that these statutes are persuasive authority for each other. The Appellate Division, Second Department, has held that justice courts are vested with the power to treble damages as a result of the same statutory language granting them all the necessary powers held by the Supreme Court. (Layton v McConnell, 61 App Div 447 [2d Dept *399 1901].) Similarly, the Appellate Division, First Department, has recognized that the New York City Civil Courts have powers to grant stays under section 212. (MacLeod v Shapiro, 20 AD2d 424 [1st Dept 1964].)
This court adopts Professor Siegel’s aforecited Practice Commentaries, which provide “the incidental powers” of this court “are extensive” and are not subject to “a specific list” (at 320 [internal quotation marks omitted]). “UJCA 212 . . . does not treat these things as subject matter jurisdiction, but acknowledges that they are only connected powers ... As long as the case itself is within the court’s subject matter jurisdiction, all other matters that arise in the case and call for an exercise of judicial power are within the jurisdiction of the court if, assuming the identical case were brought in the supreme court, the supreme court would have such power” (at 320 [internal quotation marks omitted]).
Clearly, the Supreme Court is a court of equity which has the jurisdictional authority to enforce General Obligations Law § 5-703 (4). Premised upon section 212, so may this court as a “connected power.” The same logic applies to respondent’s counterclaims.
Part Performance
Respondent argues that his expenditure of improvement funds represents part performance for the purpose of qualifying for a statute of frauds exception which would allow him to enforce his oral lifetime case. To succeed, such performance must be unequivocally referable to the agreement (Burns v McCormick, 233 NY 230 [1922]) and requires more than the mere payment of money (Tuttle, Pendelton & Gelston v Dronart Realty Corp., 90 AD2d 830 [2d Dept 1982]). The taking of possession of realty together with the making of improvements and the payment of rent may be sufficient to constitute “part performance.” (See Tuttle, Pendelton & Gelston v Dronart Realty Corp., supra, citing Club Chain of Manhattan v Christopher & Seventh Gourmet, 74 AD2d 277 [1st Dept 1980].)
In the instant matter it is undisputed that respondent paid rent, took possession and made improvements. However, this is not enough to obtain the “partial performance” safe harbor. The principal overriding requirement is that respondent perform under the actual oral agreement, which was to pay all overhead including real estate taxes and insurance as well as to assist in the upkeep of petitioner’s residence. The record submit *400 ted indicated that respondent failed to perform under the alleged agreement as he paid the taxes and insurance with petitioner’s own funds and seemed to act in his own interest rather than to provide assistance to an infirmed benefactor. Absent performance of the actual agreement, the statute of frauds precludes further consideration of respondent’s argument that he holds an oral lease for the life of the petitioner.[2]
Quantum Meruit
Respondent has asserted a counterclaim sounding in “quantum meruit” and seeks to recoup the value of improvements he made to petitioner’s realty. To make out a claim for quantum meruit, the claimant must establish (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services. (Bauman Assoc. v H&M Intl. Transp., 171 AD2d 479 [1st Dept 1991].)
The court has reviewed the briefs submitted upon this issue and finds petitioner’s authority to be persuasive. It is well settled that a party may not recover for quantum meruit unless the defendant requested the services. (Prestige Caterers v Kaufman, 290 AD2d 295 [1st Dept 2002].) It is not sufficient for the tenant to prove that the landlord consented to the improvements or that the landlord received a benefit from the respondent’s services. To recover on the basis of quantum meruit, it is incumbent upon the tenant to prove that the landlord agreed to pay for the work performed. (Amana Elevation Corp. v YdrohoosAquarius, Inc., 244 AD2d 371 [2d Dept 1997].) In order to recover for quantum meruit, the respondent must establish that he was working for the landlord at the time the improvements were made. (Yellowstone Indus. v Vinco Mar. Mgt., 305 AD2d 587 [2d Dept 2003].) The testimony of the petitioner established that he had only after the fact knowledge of most of the improvements and that he advised respondent not to lavishly improve the premises. Under such a scenario respondent’s cause of action in quantum meruit is unfounded.
In furtherance of the above decision, the court grants petitioner and/or his estate a money judgment in the demanded *401 sum of $1,000 and a judgment of possession and a warrant of eviction.

. The court notes that neither it nor respondent’s uncle can assume the existence or contents of a will which could be changed or destroyed by its testator at any time.

. The court notes that even if it accepted respondent’s argument, the petitioner’s death terminates respondent’s alleged lifetime lease.