CBS, INC., Plaintiff,

v.

Paul AHERN, et al., Defendants.

No. 83 Civ. 7918 (VLB).

United States District Court,
S.D. New York.

July 9, 1985.

**16**

David M. Satnick, Moses & Singer, New York City, for plaintiff.

Stewart L. Levy, Parcher & Herbert, P.C., New York City, for defendant Paul Ahern.

Mary D. Faucher, Townley & Updike, New York City, for defendant MCA Records.

Arthur J. Jacobs, Gerstein, Savage & Kaplowitz, Alan J. Shulman, Silverman & Shulman, P.C., Donald S. Engel, Engel & Engel, New York City, Donald S. Engel, Engel & Engel, Los Angeles, Cal., for defendants Scholz and Delp.

Leonard S. Elman, Stark, Elman, Amron & Rosen, New York City, for defendant Sheehan.

Nathan Dershowitz, Dershowitz & Eiger, New York City, for defendant Hashian.

## OPINION AND ORDER

MICHAEL H. DOLINGER, United States Magistrate:

Defendant Donald Thomas Scholz has moved to amend his Answer and Counterclaims. Plaintiff opposes Scholz' motion as to the first and second affirmative defenses, and as to seven of the counterclaims in full and one in part. For the reasons that follow, defendants' motion to amend is granted in all respects.

### A. *Background*

Plaintiff is engaged in, among other things, the business of producing and distributing phonographic records. It commenced this action in 1983, alleging a breach of a recording contract by the five members of a rock band known as "Boston," and by two partners in an entity known as Ahern Associates. Defendant Scholz is a member of Boston. The 1976 contract and subsequent related agreements provided that Boston would create five records for plaintiff. The essence of plaintiff's claim is that defendants failed to deliver the last three records.

Scholz filed an answer in early 1984 that asserted seven affirmative defenses and six counterclaims. Plaintiff thereafter moved to strike two of the affirmative defenses—based on estoppel and laches—for legal insufficiency, and moved as well to dismiss four of the counterclaims—for an accounting, breach of contract, breach of a fiduciary duty, and interference with contractual relations—for failure to state a claim. By Memorandum Order dated August 17,

1984, the District Court granted plaintiff's motion in full, albeit without prejudice as to the estoppel defense and all of the counterclaims.[1]

On October 30, 1984, Scholz moved for leave to amend his answer and counterclaims.[2] Scholz' amended pleading in substance alleges that there were written and oral additions and modifications to the 1976 contract; that it was plaintiff, not Scholz, who breach its contractual duties; that plaintiff made fraudulent representations upon which Scholz reasonably and justifiably relied to his detriment; and that plaintiff by improper means interfered with Scholz' attempts to negotiate contracts with other recording companies. Based upon these allegations, Scholz has repleaded the estoppel defense, added a defense of waiver, reiterated the other affirmative defenses previously pleaded, and asserted nine counterclaims that are designed to cure the deficiencies of the earlier pleading and to incorporate information gleaned from subsequent discovery. (*See* Declaration of Donald E. Engel, Esq., dated October 30, 1984.) Plaintiff has opposed the motion as to the first two affirmative defenses, the third through ninth counterclaims, and part of the first counterclaim.[3] For the reasons that follow, Scholz' motion is granted in all respects.

### B. *Discussion*

#### 1. *The Applicable Standard*

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when jus-

---

1. The Court struck Scholz' estoppel defense because his pleading failed to allege the necessary detrimental reliance; it struck his laches defense because laches is unavailable in an action at law. The counterclaim for an accounting was dismissed because the pleadings contained no factual predicate to support the existence of the requisite fiduciary relationship. The counterclaim for breach of contract was dismissed as redundant since the facts alleged should have been subsumed in the first pleaded counterclaim for breach of contract, which was not dismissed. The counterclaim for breach of fiduciary duty was dismissed on the same ground as the counterclaim for an accounting. The

counterclaim for tortious interference with contractual relations was dismissed for failure to allege the requisite existence of a pre-existing contract. *See* Memorandum Order, dated August 17, 1984.

2. A copy of Scholz' proposed First Amended Answer, Counterclaims and Jury Demand ("Amended Answer") is attached to his Notice of Motion, dated October 30, 1984.

3. The substance of the defenses and counterclaims and the parties' respective positions will be discussed seriatim.

tice so requires." The United States Supreme Court has instructed that:

> this mandate is to be heeded.... If the underlying facts or circumstances relied upon by the party may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory notice on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—leave should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed. 222 (1962). In interpreting this requirement, the Second Circuit has held that

> if the [movant] has at least colorable grounds for relief, justice does so require unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, [230] 9 L.Ed. 222 (1962); *Clay v. Martin*, 509 F.2d 109, 113 (2d Cir.1975).

*S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Building 1 Housing Development Fund Co.*, 608 F.2d 28, 42 (2d Cir.1979) (hereinafter *"Silberblatt v. East Harlem Development Fund"*).[4]

In opposing the motion by Scholz, plaintiff relies upon the asserted absence of "colorable grounds" for the proposed amendments. (*See* Plaintiff's Memorandum in Opposition at 2.)[5] In short, plaintiff asserts that "the amendments would not serve any purpose." *Kaster v. Modification Systems*, 731 F.2d 1014, 1018 (2d Cir. 1984).

Where, as here, the moving party seeks to add new legal claims or defenses, most courts have interpreted the "colorable grounds" requirement as mandating an inquiry—comparable to that required by Fed. R.Civ.P. 12(b)(6) and 12(f)—as to whether the proposed amendments state a cognizable claim or defense. 3 J. Moore, *Moore's Federal Practice*, ¶ 15.08[4] at 15–108 to 110 (2d ed. 1984 & 1984–85 Supp.). *See, e.g., Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir.1983); *Silberblatt v. East Harlem Development Fund, supra*, 608 F.2d at 42; *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir. 1979); *Valdan v. Montgomery Ward & Co.*, 591 F.Supp. 1188, 1190 (S.D.N.Y.1984); *Collyard v. Washington Capitals*, 477 F.Supp. 1247, 1249 (D.Minn.1979); *Vulcan Society v. Fire Dep't. of City of White Plains*, 82 F.R.D. 379, 387 (S.D.N.Y.1979).

■ The standard for dismissal under Rule 12(b)(6) is quite stringent. As the Second Circuit recently observed:

> to dismiss a complaint for failure to state a claim upon which relief can be granted, a court must accept plaintiff's allegations at face value, ...must construe the alle-

---

**4.** This liberal policy favoring amendments flows from the underlying purpose of Rule 15, which is to "facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.1981) (citing *Conley v. Gibson*, 355 U.S. 41, 47–48 & n. 9, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957)).

**5.** Plaintiff has not explicitly argued that Scholz is guilty of undue delay or bad faith or that it would be unduly prejudiced by the proposed amendments, and there would be no basis on the present record for such assertions. Scholz moved to amend within two months after the Court's August 1984 decision striking certain of his defenses and counterclaims, and his additional claims appear to be based upon information acquired in discovery. Moreover, since this case is not yet ready for trial, plaintiff has not shown any significant prejudice. *See, e.g., United States v. Webb, supra*, 655 F.2d at 980 (delay alone—no matter low long—is an insufficient ground for denial of leave to amend); *Silberblatt v. East Harlem Development Fund, supra*, 608 F.2d at 42 (no prejudice sufficient to deny leave to amend even though new claim asserted and discovery had been proceeding for over two years; case was not yet ready for trial and delay for additional discovery not deemed prejudicial). *Compare Johnson v. Educational Testing Service*, 754 F.2d 20, 28 (5th Cir.1985), cert. denied, ── U.S. ──, 105 S.Ct. 3504, 87 L.Ed.2d 635 (1985) (leave to amend properly denied where movant waited over twelve years).

gations in the complaint in plaintiff's favor, ...and must dismiss the complaint only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Rapf v. Suffolk County of New York*, 755 F.2d 282, 290 (2d Cir.1985) (citations omitted). *Accord, Hishon v. King & Spaulding*, 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 58 (2d Cir.1985); *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985); *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 558 (2d Cir.1985). It follows, then, that denial of a motion to amend based upon the asserted inadequacy of the proposed pleading is similarly disfavored:

> As Professors Wright and Miller have indicated, "[a]mendment should be refused only if it appears to a certainty that plaintiff cannot state a claim." 5 Wright & Miller, *supra*, § 1357 at 612–13 (citing cases....)

*Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.*, 760 F.2d 1347, 1366 (2d Cir. 1985).

The applicability of Rule 12(b)(6) analysis has another major consequence for evaluation of the motion to amend. A Rule 12(b)(6) motion is to be decided solely on the pleadings construed favorably to the pleader, and it would therefore be improper to dismiss a pleading based upon the opposing party's assertion of facts that are beyond the scope of that pleading. *See, e.g., Dugan v. Martin Marietta Aerospace*, 760 F.2d 397, 399 (2d Cir.1985); *Goldman v. Belden, supra*, 754 F.2d at 1066; *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774,

779 (2d Cir.1984).[6] It follows, then, that it would be improper to deny leave to amend based upon such an evidentiary proffer. *See, e.g., Silberblatt v. East Harlem Development Fund, supra*, 608 F.2d at 42–43; *Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*, 392 F.2d 380, 386–87 (2d Cir.1968); *Outboard Marine Corp. v. Pezetel*, 535 F.Supp. 248, 252 (D.Del.1982); *Key Pharmaceuticals, Inc. v. Lowey*, 54 F.R.D. 447, 449 (S.D.N.Y.1972).

Applying these standards to the present motion, I find that the proposed amendments of defendant Scholz are not futile and that his motion to amend should be granted in all respects.

### 2. *The First Affirmative Defense* [7]

Scholz asserts estoppel as his first affirmative defense. In substance he alleges that in December 1977 and thereafter, plaintiff represented, both in writing and orally, that it would not enforce the time requirements for delivery of records under the parties' earlier written agreement, but rather would extend the terms of the agreement, and in reliance on that assurance he expended substantial amounts of time and money in preparing the next album and purchasing other persons' interests in the royalties for the records. Plaintiff contends that this defense is insufficient because it is based in part upon oral promises, because there was no consideration for the oral promises, and because Scholz has assertedly failed, as he did in his original answer, to allege the necessary detrimental reliance.

As to its first point, plaintiff asserts that insofar as the first affirmative defense is based upon an oral promise, it is insuffi-

---

6. If the Court chooses to rely upon documents outside the pleadings, it must convert the motion into one for summary judgment and give the parties an opportunity to be heard on the modified motion. *See* Fed.R.Civ.P. 12(b)(6); *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (*per curiam*); *Goldman v. Belden, supra*, 754 F.2d at 1066.

7. The parties do not specifically discuss what law governs the defenses and claims asserted by Scholz, although both sides rely upon New York law. In the absence of any argument to the contrary, I too assume that New York law governs. *See, e.g., Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 121 (2d Cir.1984).

cient as a matter of law.[8] Plaintiff premises this argument upon the alleged terms of its contract with Scholz, which it asserts contains a provision expressly prohibiting oral modification. According to plaintiff, section 15–301 of the New York General Obligations Law precludes giving effect to oral modifications of a contract in contravention of a merger clause—such as this—prohibiting oral modifications.[9] Plaintiff also argues that the asserted oral promise is barred by the Statute of Frauds as codified in N.Y.Gen.Oblig.L. § 5–701(a)(1).[10]

Neither of these arguments withstands scrutiny. First, the terms of the parties' agreement, which plaintiff seeks to rely upon, are not specifically pleaded in the complaint or answer, and are not annexed to either of those pleadings. Accordingly, they are not to be taken into account on a Rule 12(b)(6) motion, *see, e.g., Goldman v. Belden, supra,* 754 F.2d at 1065–66, or on a motion to amend. *See, supra,* p. 19. Necessarily, then, plaintiff's unsworn proffer, in its legal memorandum, of the contents of the contract must be disregarded. *See* p. 19, *supra.*

Second, notwithstanding a contractual provision prohibiting oral modification, under New York law the parties may agree to waive that requirement and such an oral agreement, if relied upon by one of the parties, is enforceable:

In New York the doctrine is well established that, even where a contract provides that there shall be no waiver or amendment not evidenced by a writing, 'the prohibition of oral modification waiver, may itself be waived.' ... And estop-

pel to assert the Statute of Frauds may be founded upon an oral agreement made *after* the execution of the principal agreement.

*Neonex International Ltd. v. Norris Grain Co.,* 338 F.Supp. 845, 853 (S.D.N.Y. 1972) (emphasis in original); *accord, Nassau Trust Co. v. Montrose Products Corp.,* 56 N.Y.2d 175, 186, 451 N.Y.S.2d 663, 669, 436 N.E.2d 1265 (1982); *Marine Midland Bank v. Midstate Lumber Co.,* 79 A.D.2d 783, 784, 435 N.Y.S.2d 78, 79 (3d Dep't 1980). *Cf. Schlansky v. United Merchant & Manufacturers, Inc.,* 443 F.Supp. 1054, 1058–59 (S.D.N.Y.1977) (dismissing claim for breach of oral promise where no estoppel was alleged). Thus, an estoppel defense may be available notwithstanding noncompliance with N.Y.Gen.Oblig.Law § 15–301 and the Statute of Frauds. *See, e.g., Philo Smith & Co., Inc. v. USLIFE Corp.,* 554 F.2d 34, 35–36 (2d Cir.1977); *Zolar Publishing Co. v. Doubleday & Co.,* 529 F.2d 663, 667 (2d Cir.1975); *L. Fatato, Inc., N.Y.S.-T.S. v. Miller Brewing Co.,* 582 F.Supp. 1377, 1379 (E.D.N.Y.1984); *Mauala v. Milford Mgm't Corp.,* 559 F.Supp. 1000, 1004 (S.D.N.Y.1983); *The Savage Is Loose Co. v. United Artists,* 413 F.Supp. 555, 559 (S.D.N.Y.1976); *Nassau Trust Co. v. Montrose Products Corp., supra,* 56 N.Y.2d at 186, 451 N.Y.S.2d at 669, 436 N.E.2d 1265; *Buddman Distributors v. Labatt Importers, Inc.,* 91 A.D.2d 838, 839, 458 N.Y.S.2d 395, 395–97 (4th Dep't 1982); *cf. Swerdloff v. Mobil Oil Corp.,* 74 A.D.2d 258, 261, 427 N.Y.S.2d 266, 268–70 (2d Dep't 1980), *app. den.,* 50 N.Y.S.2d 913, 431 N.Y.S.2d 523, 409 N.E.2d 995 (1980).[11]

**8.** Plaintiff makes the same argument with respect to the fourth and fifth counterclaims and part of the first counterclaim.

**9.** Section 15–301 provides in pertinent part:

1. A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent. N.Y.Gen.Oblig.L. § 15–301 (McKinney's 1978).

**10.** Section 5–701 provides in relevant part:

Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

1. By its terms is not to be performed within one year from the making thereof.... N.Y.Gen.Oblig.L. § 5–701(a) (McKinney's 1978 & 1984–85 Supp.).

**11.** There is some suggestion in New York law that estoppel does not validate an oral contract, otherwise invalid under the Statute of Frauds, absent some allegation of fraud. *See Sawyer v.*

Plaintiff's next argument, that any "oral promise" that may have been made lacks consideration, is also unavailing. It is black letter law that promissory estoppel is a substitute for consideration. *See, e.g., Schmidt v. McKay,* 555 F.2d 30, 36 (2d Cir.1977); *Murphy v. Gutfreund,* 583 F.Supp. 957, 966 (S.D.N.Y.1984); *Nassau Trust Co. v. Montrose Products Corp., supra,* 56 N.Y.2d at 184, 451 N.Y.S.2d at 667, 436 N.E.2d 1265; *Allegheny College v. Nat'l Chautauqua County Bank,* 246 N.Y. 369, 373–74, 159 N.E. 173, 175 (1927).

■ Plaintiff also contends that Scholz has failed sufficiently to allege detrimental reliance because plaintiff's representatives only induced Scholz to do what he was already legally bound to do.[12] (*See* Plaintiff's Memorandum in Opposition at 7–8.) Construing Scholz' answer liberally, as I must, I reject plaintiff's argument.

Scholz has alleged in his proposed pleading that plaintiff made representations to him in 1977 and 1981 to the effect that it would not enforce the time requirements in their contract; that in reliance on those representations he expended time, energy, and more than $300,000 to create the next Boston album even though plaintiff was obligated to pay such costs; and that in further reliance he acquired for valuable consideration the interests of others in royalties payable by plaintiff. (*See* Amended Answer, ¶¶ 15–18, 39–43, 44(b).) This is adequate, and plaintiff's claim that defendant was only induced to do what he was legally obligated to do is unpersuasive. First, Scholz specifically alleges that he incurred expenses, in excess of $300,000, that, under the Recording Agreement, should have been borne by plaintiff. Second, if, as Scholz alleges, it was plaintiff rather than he who breached the contract, any obligations he may have had under the contract may well have been terminable.

Third, the point of this action is to determine the respective parties' rights and obligations under the contract. It would be improper to resolve this fact-laden inquiry on a pleading motion.

In sum, I find that Scholz has sufficiently pleaded the necessary elements of estoppel—a representation, rightful reliance on the representation and injury therefrom. *See Galvez v. Local 804 Welfare Trust Fund,* 543 F.Supp. 316, 317 (E.D.N.Y.1982).

### 3. *The Second Affirmative Defense*

■ As a second defense to plaintiff's claim for breach of contract, Scholz asserts that plaintiff never demanded timely performance, represented to Scholz that it would not enforce the time requirements and by its words and conduct waived the failure of defendants to timely deliver the third album. *See* Amended Answer ¶¶ 15, 19–21. Certainly, these allegations state a legally cognizable defense of waiver to a breach of contract claim. *See United States Metal Products Co. v. United States,* 302 F.Supp. 1263, 1271 (E.D.N.Y. 1969); *Oleg Cassini, Inc. v. Couture Coordinates, Inc.,* 297 F.Supp. 821, 830–31 (S.D. N.Y.1969); *Glen Cove Marin, Inc. v. Vessel Little Jennie,* 269 F.Supp. 877, 880 (E.D.N.Y.1967); *Rose v. Spa Realty Associates,* 42 N.Y.2d 338, 343, 397 N.Y.S.2d 922, 926 (1977). *See generally,* 22 *N.Y. Jur. 2d, Contracts,* § 330 (1982). *Cf. Fed. Express Corp. v. Pan American World Airways,* 623 F.2d 1297, 1302 (8th Cir.1980) (applying New York law); N.Y.U.C.C. § 2–209(4) (McKinney's 1964).

In support of its argument that the waiver defense is insufficient as a matter of law, plaintiff relies on a provision of the recording contract that it represents as saying:

A waiver by either party of any term or condition of this agreement shall not be

---

*Sickinger,* 47 A.D.2d 291, 296, 366 N.Y.S.2d 435, 440 (1st Dep't 1975). Even if this were the case, however, it would be of no avail to plaintiff because Scholz has in fact alleged fraud by his third and fifth counterclaims.

12. The District Court previously struck the estoppel defense without prejudice because "Scholz...only alleged the conclusory term 'estoppel' without alleging the necessary detrimental reliance." *See* August 17, 1984 Memorandum Order at 2–3.

deemed or construed as a waiver of such term or condition for the future, or of any subsequent breach thereof.

(*See* Plaintiff's Memorandum in Opposition at 9.) Again, plaintiff's evidentiary proffer as to the contents and meaning of the contract are not appropriately considered on a motion to amend. Whether there has in fact been a waiver and whether such past waivers have any effect on the present rights and obligations of the parties are factual questions and should not be decided on this motion. I find that Scholz' affirmative defense of waiver is legally sufficient.

### 4. The First Counterclaim

Plaintiff challenges a portion of the first counterclaim, which alleges breach of contract. That challenge is based on the same arguments as are asserted against the validity of the first affirmative defense—that is, the reliance on an oral promise. For the reasons already stated, plaintiff's challenge at the pleading stage is, at the least, premature.

### 5. The Third Counterclaim [13]

■ Scholz' third counterclaim essentially alleges that in or about 1977, representatives of CBS knowingly made false representations to him in order to persuade him to allow plaintiff to defer and control royalties that would otherwise be due to him. He further alleges that in reliance on these misrepresentations he did enter into such an arrangement to his detriment. (*See* Amended Answer ¶¶ 62–68.) Scholz has thus alleged the essential elements for a fraud claim—a representation, its falsity, knowledge of its falsity, deception and injury. *See, e.g., Mallis v. Banker's Trust Co.,* 615 F.2d 68, 80 (2d Cir.1980), *cert. den.,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109

(1981); *Songbird Jet Ltd., Inc. v. Amax Inc.,* 581 F.Supp. 912, 925 & n. 40 (S.D.N.Y. 1984) (citing New York cases); *Accusystems, Inc. v. Honeywell Information Systems,* 580 F.Supp. 474, 482 (S.D.N.Y.1984); *Potter's Photographic Applications Co. v. Ealing Corp.,* 292 F.Supp. 92, 106 (E.D.N. Y.1968).[14]

■ The only significant question with regard to the fraud claim is whether Scholz has satisfied the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This has been interpreted as requiring a specification of "the time, place and content of the false misrepresentation [*sic* ], the fact misrepresented and what was obtained or given up as a consequence of the fraud." 2A J. Moore, *Moore's Federal Practice,* ¶ 9.03 at 9–23 to 24 & n. 8 (2d ed. 1984) (citing cases). *See, e.g., Zerman v. Ball,* 735 F.2d 15, 22 (2d Cir.1984); *Denny v. Barber,* 576 F.2d 465, 468–70 (2d Cir.1978); *Pocahontas Supreme Coal Co. v. Nat'l Mines Corp.,* 90 F.R.D. 67, 73 (S.D.N.Y.1981). The requirement of specificity of pleading serves three purposes: (1) it protects defendants from unfounded damage to their reputations; (2) it ensures that the allegations are concrete enough to alert the defendant and permit him to prepare an effective defense; and (3) it is intended to prevent a plaintiff's use of general allegations as a pretext for discovery of unknown wrongs. *See, e.g., Goldman v. Belden,* 98 F.R.D. 733, 735–36 (W.D.N.Y.1983), *rev'd on other grounds,* 754 F.2d 1059 (2d Cir.1985); *Hunter v. H.D. Lee Co., Inc.,* 563 F.Supp. 1006, 1011– 12 (N.D.N.Y.1983). *Cf. Pocahontas Su-*

---

**13.** The second counterclaim, which asserts claims for common law unfair competition and violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is not challenged by plaintiff.

**14.** Plaintiff's contention that a claim for fraud cannot be based on a misrepresentation of the legal effect of a contract is baseless since that is not what Scholz is alleging. Scholz is alleging, among other things, that CBS made false repre-

sentations as to its intention to make payments according to the Deferral Agreements. (*See* Amended Answer ¶¶ 43(b), 62–68.) This alone suffices to sustain a cause of action for fraud. *See, e.g., Channel Master Corp. v. Aluminum Ltd. Sales,* 4 N.Y.2d 403, 407–08, 176 N.Y.S. 259, 262–63, 151 N.E.2d 833 (1958); *Shapiro v. Dictaphone Corp.,* 66 A.D.2d 882, 884, 411 N.Y.S.2d 669, 672 (2d Dep't 1978).

*preme Coal Co., Inc. v. Nat'l Mines Corp., supra,* 90 F.R.D. at 73.[15]

Scholz here has specifically alleged the contents of the representations, the facts misrepresented, the identity of the person who made the representations and his reliance upon the representations in giving CBS control over royalties due him. Although Scholz has not pinpointed the exact time and place of the representations, he has also given sufficient notice of the time period during which these representations were made. (*See* Amended Answer ¶¶ 34, 36–37 (incorporated by ¶ 62), ¶ 63.) This appears sufficiently specific in the present case to give plaintiff adequate notice of the claim against it. *See, e.g., Potter's Photographic Applications Co. v. Ealing Corp., supra,* 292 F.Supp. at 106–07; *Textile Banking Co. v. S. Starensier, Inc.,* 38 F.R.D. 492, 493 (D.Mass.1965). *Cf. Seligson v. Plum Tree, Inc.,* 361 F.Supp. 748, 756 (E.D.Pa.), *reh. denied,* 61 F.R.D. 343 (E.D.Pa.1973).[16]

In assessing the adequacy of this pleading, the court should read the requirements of 9(b) in conjunction with Fed.R.Civ.P. 8, which provides that a complaint should not be dismissed if the nature of the claim is apparent, *see Simcox v. San Juan Shipyard, Inc.,* 754 F.2d 430, 440 (1st Cir.1985), and that "all pleadings shall be construed to do substantial justice." Fed.R.Civ.P. 8(f). In light of the liberal policy of notice pleading [17] and the underlying purposes of Rule 9(b), I find that Scholz has stated and sufficiently pleaded a cognizable claim for fraud.

### 6. *The Fourth Counterclaim*

▮ As a fourth counterclaim, Scholz alleges that as a matter of promissory estoppel, plaintiff is bound by its promise not to withhold royalties from him. The essential elements of a cause of action based on promissory estoppel are "a promise which should reasonably induce action, justifiable reliance and damages." *Bethlehem Fabricators, Inc. v. British Overseas Airways Corp.,* 434 F.2d 840, 844 (2d Cir.1970). *Accord, Triology Variety Stores, Ltd. v. City Products Corp.,* 523 F.Supp. 691, 696–98 (S.D.N.Y.1981); *James King & Son, Inc. v. DeSantis Construction Corp.,* 97 Misc.2d 1063, 1066, 413 N.Y.S.2d 78, 81 (Sup.Ct.N.Y.Cty.1977). *See generally* 21 *N.Y.Jur.2d Contracts,* § 70 (1982); *Allegheny College v. Nat'l Chautauqua County Bank, supra,* 246 N.Y. at 373–74, 159 N.E. at 175. Scholz has sufficiently pleaded the necessary elements. *See supra* pp. 20–21; Amended Answer ¶¶ 39–41, 69–71.

Plaintiff's only argument to the contrary is that Scholz has failed to allege the "substantial injury" necessary to make out a claim for estoppel. *See, e.g., Philo Smith & Co., Inc. v. USLIFE Corp., supra,* 554 F.2d at 36; *Republic Nat'l Bank of New York v. Sabet,* 512 F.Supp. 416, 426 (S.D.N.Y.1980), *aff'd mem.,* 681 F.2d 802 (2d Cir.1981), *cert. denied,* 456 U.S. 976, 102 S.Ct. 2241, 72 L.Ed.2d 850 (1982). This is unpersuasive.

First, plaintiff apparently misreads the amended answer. Scholz specifically alleges that in reliance on plaintiff's promise he expended his time and over $300,000 and that he gave valuable consideration to acquire other persons' interests in royalties payable by CBS. These allegations, if proven, would sufficiently support a finding of substantial injury. *See, e.g., Triology Variety Stores, Ltd. v. City Products Corp., supra,* 523 F.Supp. at 698 (plaintiff's allegation that he was induced to expend $93,000 was sufficient to support a finding of substantial injury). *Cf. Philo*

---

**15.** The third purpose is especially pertinent to securities fraud cases, where there is a higher potential for "strike suits." *See Goldman v. Belden, supra,* 98 F.R.D. at 735–36.

**16.** This is not a securities fraud case, where the courts apparently apply a stricter pleading requirement because of the potential for strike suits. *See, e.g., Decker v. Massey-Ferguson, Ltd.,*

681 F.2d 111, 114–15 (2d Cir.1982); *Goldman v. Belden, supra,* 98 F.R.D. at 735–36. I also note that plaintiff has not in any way suggested that the failure to specify an exact date would hinder its ability adequately to defend against the fraud claim.

**17.** *See also* p. 18 n. *, supra.*

*Smith & Co., Inc. v. USLIFE Corp., supra,* 554 F.2d at 36 (loss of a finder's fee not substantial). Second, the substantiality of the alleged injury is a factual issue and should not be determined at the pleading stage. *Cf. Philo Smith & Co., Inc. v. USLIFE Corp., supra,* 554 F.2d at 33, 34 (the Second Circuit upheld the District Court's dismissal of the complaint *after plaintiffs' case at trial* because plaintiffs had failed to make a *prima facie* case for substantial injury).

Scholz here has sufficiently alleged a cognizable claim for promissory estoppel and should be permitted to amend his answer to add it as a counterclaim.

### 7. *The Fifth Counterclaim*

■ Scholz proposes to assert as a fifth counterclaim another claim for fraud. Scholz alleges that in 1981 the president of CBS Records, Walter Yetnikoff, knowingly made false representations that CBS would pay Scholz certain withheld royalties and that in reliance on those representations he continued working on the third album, utilizing his own funds. This cause of action is based upon the same facts as the immediately preceding promissory estoppel claim.[18] For the reasons already noted in connection with the third counterclaim, I find Scholz has stated a cognizable claim for fraud and has pleaded it with sufficient particularity.

■ Plaintiff's principal contention in opposition is that a fraud claim cannot be based upon oral representations that are voided by the Statute of Frauds. Although this proposition appears somewhat surprising at first blush because it apparently would bar many claims for oral misrepresentation, there appears to be a split of authority on the issue. *Compare Philo Smith & Co. v. USLIFE Corp.,* 420 F.Supp. 1266, 1274 (S.D.N.Y.1976), *aff'd,* 554 F.2d 34 (2d Cir.1977) (fraud claim upheld even though based on oral promise otherwise barred by Statute of Frauds);

*Channel Master Corp. v. Aluminum Ltd. Sales, supra,* 4 N.Y.2d at 408, 176 N.Y.S.2d at 262–63 (same); *Paul J. Cowley & Associates, Inc. v. Comtax, Inc.,* 100 A.D.2d 744, 473 N.Y.S.2d 625, 626 (4th Dep't 1984) (same); *Shapiro v. Dictaphone Corp., supra,* 66 A.D.2d at 884, 411 N.Y.S.2d at 672 (same); *Steinberg v. Universal Machinefabrik GMBH,* 24 A.D.2d 886, 887–88, 264 N.Y.S.2d 757, 760 (2d Dep't 1965) (same), *with England Strohl/Denigris, Inc. v. Weiner,* 538 F.Supp. 612, 615 (S.D.N.Y. 1982) (promise voided by Statute of Frauds is void for all purposes); *Dung v. Parker,* 52 N.Y. 494, 497, (1873) (same); *Club Chain of Manhattan, Ltd. v. Christopher & Seventh Gourmet, Ltd.,* 74 A.D.2d 277, 284–85, 427 N.Y.S.2d 627, 631–32 (1st Dep't 1980) (same); *Roberts v. Champion Int'l, Inc.,* 52 A.D.2d 773, 382 N.Y.S.2d 790, 791 (1st Dep't 1976) (same). Whatever may be the merits of these two lines of cases, we need not decide this interesting issue. Even assuming that the fraud claims are in a sense derivative of the claims based upon oral promises, the promises cannot be considered invalidated by the Statute of Frauds since Scholz has sufficiently invoked the doctrine of estoppel.[19]

### 8. *The Sixth Counterclaim*

■ Scholz alleges as a sixth counterclaim that plaintiff maliciously breached a fiduciary duty that it owed him with respect to his deferred royalties. Specifically, he alleges that the agreements for deferral of royalties expressly provided that the plaintiff was to hold previously earned royalties of Scholz and Boston in "special accounts;" that they were to be "invested and reinvested from time to time" in securities selected by an investment advisor; that the amounts were to be held separately "for the benefit of" Scholz and Boston; and that the amounts due were not subject to any "setoff or counterclaim" against Scholz. Scholz also alleges that plaintiff did in fact comply with the above conditions until 1983, that Scholz placed his con-

---

**18.** Such alternative pleading is of course proper. *See* Fed.R.Civ.P. 8(e).

**19.** *See* cases cited at p. 20, *supra.*

fidence and trust in plaintiff with respect to the deferred royalties, and that in 1983 plaintiff breached its duty by appropriating the deferred royalties for itself. (*See* Amended Answer ¶¶ 80–86.)

Again, these allegations are essentially the same as in the previous claims Scholz proposes to assert, and his alternative pleading is not defective. *See* Fed.R.Civ.P. 8(e). Construing Scholz' allegations liberally, I find that he has sufficiently pleaded the factual basis for a fiduciary relationship and the breach thereof.

While it cannot be gainsaid that a "simple contract" does not create a fiduciary relationship giving rise to special duties, *see, e.g., Arnold Productions, Inc. v. Favorite Films Corp.*, 298 F.2d 540, 542 (2d Cir.1962); *Van Valkenburg, Nooger & Neville, Inc. v. Hayden Publ. Co.*, 33 A.D.2d 766, 306 N.Y.S.2d 599, 600 (1st Dep't 1969), *aff'd*, 30 N.Y.2d 34, 330 N.Y.S.2d 329, 281 N.E.2d 142 (1972), *cert. denied*, 409 U.S. 875, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972), the distinction between contract and fiduciary relations admits of no simple and readily discernible definition. *Cf.* G. Bogert, *The Law of Trusts and Trustees*, § 17 (2d ed. rev. 1984). "The exact limits of the term 'fiduciary relation' are impossible of statement." *Id.* at § 481. Broadly speaking,

> [a] fiduciary relationship is one founded on trust or confidence reposed by one person in the integrity and fidelity of another. The term is a broad one.... The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exists whenever one man trusts in and relies upon another. Out of such a relation, the laws raise the rule that neither party may exert influence or pressure upon the other, take selfish advantage of his trust or deal with the subject-matter of the trust in such a way as to benefit himself or prejudice the other except in the exercise of utmost good faith....

*United States v. Reed*, 601 F.Supp. 685, 707 (S.D.N.Y.1985). *See Penato v. George*, 52 A.D.2d 939, 942, 383 N.Y.S.2d 900, 904–05 (2d Dep't 1976), *appeal dismissed*, 42 N.Y.2d 908, 397 N.Y.S.2d 1004, 366 N.E.2d 1358 (1977). *See generally* Bogert, *supra*, §§ 481–82; 36A *C.J.S. Fiduciary*, at 385 (1961). Since fiduciary duties rest upon principles of equity and fairness, courts of equity have refrained from defining the precise parameters of the circumstances from which they may arise. *See* Bogert, *supra*, § 482 at 284–86; 36A *C.J.S. Fiduciary, supra*, at 385.

Scholz here has alleged a duty on the part of plaintiff to hold monies belonging to Scholz in a special account for his benefit. These allegations adequately support the imposition of fiduciary duties with respect to the monies. *See, e.g., Teledyne Industries, Inc. v. Eon Corp.*, 373 F.Supp. 191, 199–202 (S.D.N.Y.1974)[20] (court held that a cause of action for breach of fiduciary duty was sufficiently alleged where plaintiff alleged that defendant had a duty to place monies in a "special account," the principal purpose of which was to pay plaintiff). *Cf. Irving Trust Co. v. McKeever*, 44 F.Supp. 842, 845–46 (E.D.N.Y.1942) (defendant who agreed to invest money and property given over by plaintiff was deemed to be a fiduciary); *In re Primiano Construction Co.*, 117 Misc.2d 523, 524, 458 N.Y.S.2d 147, 148 (Sup.Ct. Nassau Cty. 1982) (fiduciary relationship created by statute that deemed funds received by contractor to be held for benefit of subcontractors); *Pavone v. Aetna Casualty and Surety Co.*, 91 Misc.2d 658, 665, 398 N.Y. S.2d 630, 636 (Sup.Ct. Monroe Cty.1977) (fiduciary duty may exist where a special duty exists to protect the interests of another). *Compare In re Morales Travel Agency*, 667 F.2d 1069, 1071–72 (1st Cir. 1981) (no fiduciary duty created where funds were not required to be segregated for special purposes); *In re Black & Geddes, Inc.*, 35 B.R. 830, 836 (S.D.N.Y. 1984) (same). The fact that the agreement

---

**20.** Although the Court was applying California law, the common law rules for determining the existence of a fiduciary relationship are the same.

allegedly permits no setoffs against the royalties owed also supports a finding of a fiduciary relationship. *See* Bogert, *supra,* at § 17 n. 19 & accompanying text.

Plaintiff's only objection is that "Scholz in his pleadings "mischaracterizes the documents on which [he] relies" and that *"dispositive* provisions of those writings . . . negate any fiduciary duty on CBS' part." (Plaintiff's Memorandum at p. 14 (emphasis in original).) Whatever the merits of plaintiff's argument, I do not accept its evidentiary proffer as to the contents and construction of its agreement with Scholz. These factual questions [21] should be resolved at trial or, if appropriate, on a motion for summary judgment, not on a motion to amend. *See Silberblatt v. East Harlem Development Fund, supra,* 608 F.2d at 42–43.

### 9. *The Seventh Counterclaim*

■ For his seventh counterclaim Scholz asserts a claim for conversion. Specifically, he alleges that plaintiff, in violation of its fiduciary duty, knowingly and wrongfully misappropriated royalties that he and Boston had previously earned and were entitled to.

In opposition, plaintiff agains refers to the assertedly dispositive provisions of the contract, which it alleges clearly characterize the deferred royalties as an ordinary debt. From this factual premise plaintiff argues that conversion does not lie for failure to pay an ordinary debt and that conversion will not lie absent specific and identifiable property, which is not present in this case. (*See* Plaintiff's Memorandum in Opposition at 15–16.)

Again, plaintiff's proffer with respect to the terms and construction of its agreement with Scholz is not properly considered on the present motion. As to whether

Scholz has, by his allegations, stated a claim for conversion:

It is well settled that an action will lie for the conversion of money where there is an obligation to . . . treat in a particular manner the specific money in question. . . . Money which is received by one who had a fiduciary relationship in respect to it may be converted.

23 *N.Y.Jur.2d, Conversion,* § 12 (1982) (citing, *inter alia, Britton v. Ferrir,* 171 N.Y. 235, 63 N.E. 954, (1902); *Clearview Associates, Inc. v. Clearview Gardens First Corp.,* 285 A.D. 969, 139 N.Y.S.2d 81 (2d Dep't 1955)). Even though a person may initially be in rightful possession of property, he may still be liable for conversion if he refuses the rightful owner's demand for the property. *470 West End Corp. v. East River Savings Bank,* 102 Misc.2d 1024, 1027, 424 N.Y.S.2d 859, 860–61 (Civ.Ct.N.Y.Cty.1980).

I conclude that Scholz has sufficiently alleged the existence of a fiduciary relationship,[22] an obligation on the part of plaintiff to specially treat monies due to him, and the wrongful misappropriation of the monies. (*See* Amended Answer ¶¶ 81–86, 88–92.) Accordingly, he has adequately stated a cognizable claim for conversion.

### 10. *The Eighth Counterclaim*

■ The eighth counterclaim is for tortious interference with pre-contractual relations. Specifically, Scholz alleges that after his arrangement with plaintiff had broken down, he sought to negotiate an alternative agreement with two other recording companies for the production of the next Boston album; that plaintiff prevented the other two companies from entering into such an agreement with Scholz by threatening both to file costly lawsuits, whether meritorious or not, and to discontinue business with those companies.

---

**21.** *See Carter Equipment v. John Deere Industrial Equipment Co.,* 681 F.2d 386, 390 (5th Cir. 1982) (the existence or nonexistence of a fiduciary relationship is a question of fact for the jury); *Roberts v. Sears, Roebuck & Co.,* 573 F.2d 976, 983 (7th Cir.), *cert. denied,* 439 U.S. 860, 99 S.Ct. 179, 58 L.Ed.2d 168 (1978) (same); *Pavone*

*v. Aetna Casualty and Surety Co., supra,* 91 Misc.2d at 666, 398 N.Y.S.2d at 636 (same); Bogert, *supra,* § 481 at 265–66; 36A *C.J.S. Fiduciary, supra,* at 385, 387.

**22.** *See* pp. 24–26, *supra.*

Scholz further asserts that plaintiff withdrew previously granted permission to one of the other companies to use plaintiff's artists; and that Scholz would have entered into a satisfactory agreement with one of the companies in April 1984 absent plaintiff's wrongful activities. (*See* Amended Answer ¶¶ 95–98, 106–10.)

It is well established in New York that: [i]nterference with pre-contractual relations is actionable where a contract would have been entered into had it not for the malicious, fraudulent or deceitful actions of a third party.

*Optivision, Inc. v. Syracuse Shopping Center Ass'n*, 472 F.Supp. 665 (N.D.N.Y. 1979) (citing New York cases). *See, e.g., Crimpers Promotions, Inc. v. Home Box Office, Inc.*, 554 F.Supp. 838, 850 (S.D.N.Y. 1982), *aff'd*, 724 F.2d 290 (2d Cir.1983); *Morse v. Swank, Inc.*, 493 F.Supp. 110, 116 (S.D.N.Y.1980); *Robbins v. Odgen Corp.*, 490 F.Supp. 801, 811 (S.D.N.Y.1980); *Harden, S.P.A. v. Commodore Electronics, Ltd.*, 90 A.D.2d 733, 734, 455 N.Y.S.2d 792, 794 (1st Dep't 1982); *Williamson, Picket, Gross, Inc. v. 400 Park Ave. Co.*, 63 A.D.2d 880, 405 N.Y.S.2d 709, 710–11 (1st Dep't 1978), *aff'd*, 47 N.Y.2d 769, 417 N.Y.S.2d 460 (1979). *See generally* 32 *N.Y.Jur., Interference*, § 16 (1963).

Plaintiff argues principally that Scholz has failed to state a claim because it was "privileged" to act in its economic self-interest in the manner that it did.[23] Plaintiff here, as with most of the other counterclaims, seeks, on this motion, to have the Court resolve factual questions which must await determination in later proceedings.

Whether ... defendants ... maliciously interfered with [the] negotiations or contract is a factual question. The answer rests in the hands of the defendants; [plaintiff] should have the opportunity through discovery ... to establish if defendants did interfere, whether they did so maliciously and by what means ... and whether they had justification.

*Morse v. Swank, Inc., supra*, 493 F.Supp. at 116 (citing the Court's previous opinion, *Morse v. Swank, Inc.*, 459 F.Supp. 660, 667 (S.D.N.Y.1978)) (citations omitted). *Accord, Crimpers Promotions, Inc. v. Syracuse Shopping Center Ass'n, supra*, 554 F.Supp. at 850.

In sum, Scholz has stated a cognizable claim for tortious interference with pre-contractual relations and should be permitted to amend his answer to add it as a counterclaim. *Cf. Crimpers Promotions, Inc. v. Syracuse Shopping Center Ass'n, supra*, 554 F.Supp. at 850.

### 11. *The Ninth Counterclaim*

The ninth, and last, counterclaim asserts violations of the Sherman and Clayton Acts. In substance Scholz alleges that after Boston's agreement with plaintiff had collapsed, plaintiff and one or more of the other major recording acted jointly to prevent Scholz and Boston from securing a contract with any other record producer to produce its next album.[24]

The liberal pleading requirement applicable to motions to dismiss apply with full force to antitrust claims under the Sherman Act. As the Second Circuit has noted in rejecting the proposition that antitrust claims should be pleaded with greater specificity than other claims:

It has been clear in this Circuit since *Nagler v. Admiral Corp.*, 248 F.2d 319 (2d Cir.1957) (Clark, C.J.), however, that

---

**23.** Plaintiff also argues that Scholz has not alleged that the two companies were "prepared to enter into any contract with Scholz, with any specified terms." Plaintiff's assertion is inaccurate. (*See* Amended Answer ¶ 99. There is, moreover, no requirement that the specific terms of the unconsummated contract be alleged. In addition, whether a contract would have been entered into is a factual question. Indeed, in the case relied upon by plaintiff, although the court found that the negotiations would not necessarily have resulted in a contract, it made those findings only after an evidentiary hearing on a motion for a preliminary injunction. *See Optivision, Inc. v. Syracuse Shopping Center Ass'n, supra*, 472 F.Supp. at 670, 685.

**24.** Scholz also incorporated into this claim all his allegations in his eighth counterclaim. (*See* Amended Answer ¶¶ 102–10.)

a short plain statement of a claim for relief which gives notice to the opposing party is all that is needed in antitrust cases, as in other cases under the Federal Rules.

*George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 554 (2d Cir.1977). *Accord, Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746–48, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp.*, 711 F.2d 989, 995–96 (11th Cir.1983); *Barr v. Dramatists Guild, Inc.*, 573 F.Supp. 555, 559 (S.D.N.Y.1983); *Eye Encounter, Inc. v. Contour Art, Ltd.*, 81 F.R.D. 683, 686 (E.D.N.Y.1979). As with other claims, an antitrust claim should not be dismissed unless "it appears beyond doubt that plaintiff can prove no set of facts in support of its claim which would entitle him to relief." *Hospital Bldg. Co. v. Trustees of Rex Hospital, supra*, 425 U.S. at 746, 96 S.Ct. at 1853 (*citing Conley v. Gibson, supra*, 355 U.S. at 45–46, 78 S.Ct. at 101–02); *Eye Encounter, Inc. v. Contour Art, Ltd., supra*, 81 F.R.D. at 686 (same). *Accord, Quality Foods v. Latin American Agribusiness Development Corp., supra*, 711 F.2d at 995. Indeed, there is even some suggestion that pleading requirements are more relaxed in antitrust cases where "the proof is is the hands of the alleged conspirators." *Hospital Bldg. Co. v. Trustees of Rex Hospital, supra*, 425 U.S. at 746, 96 S.Ct. at 1853 (dismissals prior to discovery on antitrust claims should be granted very sparingly). *Accord, Strobl v. New York Mercantile Exchange*, 561 F.Supp. 379, 383 (S.D.N.Y.1983); *Eye Encounter, Inc. v. Contour Art, Ltd., supra*, 81 F.R.D. at 686.[25]

Applying these principles, I find that Scholz has sufficiently stated a Sherman Act claim. To state a claim under section 1 of the Act, a party must allege three elements: (1) a combination or conspiracy; (2) that results in a restraint on interstate or foreign commerce;[26] and (3) injury to the plaintiff's business or property.[27] *See, e.g., Multiflex, Inc. v. Samuel Moore & Co., supra*, 709 F.2d at 986–87; *Oreck Corp. v. Whirlpool Corp.*, 639 F.2d 75, 78 (2d Cir. 1980), *cert. denied*, 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981); *Sharon Steel Corp. v. Chase Manhattan Bank*, 88 F.R.D. 38, 42 (S.D.N.Y.1980); *Nat'l Gerimedical Hospital and Gerentology Center v. Blue Cross of Kansas City*, 479 F.Supp. 1012, 1024 (W.D.Mo.1979), *aff'd*, 628 F.2d 1050 (8th Cir.1980), *rev'd on other gds.*, 452 U.S. 378, 101 S.Ct. 2415, 69 L.Ed.2d 89 (1981).

---

25. Greater specificity may be required where antitrust claims are asserted against individual rather than corporate defendants. *See State of New York v. Dairylea Cooperative, Inc.*, 570 F.Supp. 1213, 1216–17 (S.D.N.Y.1983). But that is not the case here.

26. Since all agreements in some sense restrain trade, in order to prove a violation of the Sherman Act the plaintiff must at some point show that the restraint in question is unreasonable unless it is one of a defined category of restraints that are deemed *per se* violations because they are inherently unreasonable. *See, e.g., Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Painting Co.*, —— U.S. ——, 105 S.Ct. 2613, 86 L.Ed.2d 202 (1985). The question of whether a restraint is reasonable or not is usually a question for the fact-finder and cannot be disposed of on a motion to dismiss. *See Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977); *Multiflex, Inc. v. Samuel Moore & Co.*,

709 F.2d 980, 986, 988 (5th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1594, 80 L.Ed.2d 126 (1984).

Some cases speak of the requirement of showing anticompetitive effect to sustain an action under Section 1 of the Sherman Act. *See, e.g., Capital City Publ. Co. v. Trenton Times Corp.*, 575 F.Supp. 1339, 1344 (D.N.J.1983). Although courts use the terms "restraint of trade" and "anticompetitive effect" alternatively, the two are synonymous. *Cf., e.g., Associated General Contractors of CA., Inc. v. CA. State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 903, 74 L.Ed.2d 723 (1983); *Continental T.V., Inc. v. GTE Sylvania, Inc., supra*, 433 U.S. at 49–50, 97 S.Ct. at 2557, 53 L.Ed.2d 568; *Multiflex, Inc. v. Samuel Moore & Co., supra*, 709 F.2d at 986.

27. The requirement of injury is really a standing requirement for a private party to seek damages. *See Multiflex Inc. v. Samuel Moore & Co., supra*, 709 F.2d at 987.

Scholz has alleged that:

six major recording companies in the United States...control more than 90% of the market representing retail sales of sound recordings in the United States. CBS is the largest of the six.... [D]uring the period March, 1984 through July, 1984, CBS entered into a combination and conspiracy with one or more of the other five major recording companies for the purpose of preventing Scholz and BOSTON from securing a contractual arrangement whereby sound recordings of BOSTON would be distributed in the United States and throughout the world.... [I]n furtherance of such combination and conspiracy, CBS and said unnamed co-conspirators agreed that none of them would enter into an agreement or arrangement whereby BOSTON sound recordings could be released and sold unless and until CBS [permitted it.] CBS and one or more of said unnamed co-conspirators [also] took concerted action designed to prevent Scholz and BOSTON from concluding an agreement with another major record company which was at the time prepared to enter into an agreement with Scholz and Boston.

(*See* Amended Answer at ¶¶ 104–10.) Scholz' allegations, if proven, would certainly support a finding of conspiracy or concerted action within the meaning of the Sherman Act. *See, e.g., Capital City Publ. Co. v. Trenton Times Corp., supra,* 575 F.Supp. at 1344–45; *Eye Encounter, Inc. v. Contour Art, Ltd., supra,* 81 F.R.D. at 689; *Christen, Inc. v. BNS Industries, Inc.,* 517 F.Supp. 521, 524 (S.D.N.Y.1981). The fact that Scholz has not specifically identified plaintiff's co-conspirators is not fatal since he has identified them with sufficient particularity. *See, e.g., Eye Encounter, Inc. v. Contour Art, Ltd., supra,* 81 F.R.D. at 689–90; *Christen, Inc. v. BNS Industries, Inc., supra,* 517 F.Supp. at 524.[28]

As for the required pleading of a restraint of trade, in substance plaintiff alleges, *inter alia*, a concerted boycott or refusal to deal. Such conduct is plainly cognizable as a potential violation of section 1 of the Sherman Act and in many circumstances has been deemed to be a *per se* violation. *See, e.g., Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co., supra,* —— at ——–——, 105 S.Ct. at 2617–22 (citing cases). *See also* Bauer, "Per Se Illegality of Concerted Refusals to Deal: A Rule Ripe for Reexamination," 79 Colum.L.Rev. 685, 686–92 (1979). As for the specific allegations by Scholz, these appear adequate to survive a Rule 12(b)(6) analysis.

The Supreme Court has stated that allegations that the "restraint in question 'substantially and adversely affects interstate commerce'" are sufficient for pleading purposes. *Hospital Bldg. Co. v. Trustees of Rex Hospital, supra,* 425 U.S. at 743, 96 S.Ct. at 1852 (*citing Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 195, 95 S.Ct. 392, 398, 42 L.Ed.2d 378 (1974)). The restraint may be substantial even if its impact falls far short of causing companies to collapse or affecting market prices. 425 U.S. at 745. All that is required is that the "alleged conspiracy, to the extent it is successful, will place 'unreasonable burdens on the free and uninterrupted flow' of interstate commerce." *Id.* 425 U.S. at 746, 96 S.Ct. at 1853. There is no doubt here that the record industry involves substantial interstate and even foreign commerce. Moreover, the parties agree that Boston's first two albums grossed millions of dollars across the United States and around the world. A combination or conspiracy to prevent the creation and distribution of another such album could therefore presumably substantially affect interstate trade in records. *See, e.g., Crimpers Promotions, Inc. v. Home Box Office, supra,* 554 F.Supp. at 847 (claim sufficiently stated where plaintiff alleged that cable companies conspired to restrain trade in buying and selling of cable television programming and coerced competitors to boycott plaintiff's trade show). *Cf. Associated General*

---

**28.** In any event, it appears that plaintiff knows of the identities of at least some of the alleged conspirators. (*See* Plaintiff's Memorandum in Opposition at 17, 20.)

*Contractors of CA., Inc. v. CA. State Council of Carpenters, supra,* 103 S.Ct. at 903 ("coercive activity that prevents its victims from making free choices between market alternatives is inherently destructive of competitive conditions and may be condemned....").

With respect to injury, it is sufficient for a party to allege that it has suffered pecuniary loss directly or proximately caused by the conspiracy. *See Reiter v. Sonotone Corp.,* 442 U.S. 330, 338–39, 99 S.Ct. 2326, 2330–31, 60 L.Ed.2d 931 (1979). Scholz here alleges that he was damaged in excess of $400,000 as a result of the conspiracy to prevent him from creating and distributing another record album. These allegations, if proven, would support a finding of the requisite injury.

While "bare bones statements of conspiracy or of injury under the antitrust laws without any facts permit dismissal," *Heart Research Foundation v. Gen'l Motors Corp.,* 463 F.2d 98, 100 (2d Cir.1972), Scholz here has more than adequately alleged the requisite elements. He should therefore be permitted to amend his answer to add the antitrust claim.[29]

### CONCLUSION

I find that Scholz' first and second affirmative defenses are legally sufficient and that his third through ninth counterclaims state legally cognizable claims. For the reasons stated above, Scholz' motion to amend is granted in all respects.

SO ORDERED.

---

**29.** Plaintiff has recently submitted a Supplemental Memorandum in Opposition to Motion for Leave to Amend and accompanying materials. The purpose of the submission is "specifically to refer to the facts relevant to Scholz' proposed Amended 'Eighth' and 'Ninth' counterclaims." The essence of plaintiff's presentation

is that Scholz' failure to enter into a satisfactory agreement with other recording companies resulted from their respect for CBS and fear of litigation rather than from any fault on the part of CBS. Whatever the merits of plaintiff's proffer, it is irrelevant in considering whether the claims are well-pleaded.